No. 95.—WILLIAM HARRISON, plaintiff in error, *vs.* WILLIAM H. BROOKS, defendant.

[1.] A Court of Equity will only exercise the power to restrain nuisances in the course of erection in cases of necessity, where the evil sought to be remedied is not merely probable, but certain; and it will be the less inclined to interfere where the apprehended mischief is to follow from such establishments (as for instance, a livery stable) as have a tendency to promote the public convenience.

In Equity, in Randolph Superior Court. Decided by Judge KIDDOO, at Chambers, February 25th, 1856.

This was a bill filed by William H. Brooks against William Harrison. The bill charges that complainant is the owner of lots one and three, in square twelve; and also of lot three in square eleven, in the town of Cuthbert, Randolph County, Georgia; that lots Nos. 1 and 3 in square 12 have, for twenty years, been the site of a house used as a hotel or inn for the accomodation of the travelling public and of the citizens of Cuthbert, many of whom have been entertained thereat; that said house being thus kept, complainant, as well as the former proprietors, have depended, in a great measure, upon the profits arising from the same, for the support of themselves and families, and for a reasonable remuneration for their trouble and outlay in erecting suitable buildings, &c. for the accommodation of the public; that the annual receipts of said hotel business are ten thousand dollars or thereabouts.

The bill charges that to meet the increasing wants of the public, complainant has, within the last two years, erected a commodious hotel building on said lot No. 1, in said square 12, containing 18 or 20 rooms, at a cost of about six thousand dollars; and that on account of its eligible situation, it is the most comfortable public house in Cuthbert; that by reason of its location, &c. it has, since its completion, received a large share of the transient and local custom—being a desirable boarding place for private families, and always receiving a portion of such patronage; that it has always been well adapted to the purposes for which it is used—being free from all nuisances and disturbances of every kind; and complainant expected it would remain so when he purchased said lot and erected said hotel, and that he would be permitted to enjoy all the benefits arising from said purchase.

The bill charges that William Harrison has recently purchased lots 1 and 2, in square No. 11, in said town of Cuthbert, immediately in front of said hotel, and distant therefrom only 54 feet, and proposes to remove or has removed all the houses therefrom, and is now erecting thereon a large livery and sale stable; that the whole of said lots being 120 feet.

square, is to be occupied by said stable and a horse lot or lots; that the stable is to be on the east side of said hotel, on which side is the private entrance for ladies, and also an upper piazza extending the whole length of said house, as well as the most desirable rooms in the house—such as are usually appropriated to ladies, private families, &c.; that the object of erecting said stable is to keep horses for hire and sale, and, complainant believes, if such is done he will have to abandon his house as a hotel, or sell the same at a greatly reduced price; or if he should have to retain it, its receipts would be so diminished as not to compensate him or pay his expenses for keeping such a house; that he and his guests would have to submit to loss of comfort and health occasioned by the offensive and unhealthy effluvia arising from the manure and decayed vegetable matter accumulating about said stable, attracting immense swarms of flies, &c.; that much annoyance would result from the incessant stamping of horses, the collection of leaves and other trash in the stalls and on the lot.

The bill charges that defendant had been requested to desist from erecting said stable, which he refused to do, but is now engaged in erecting the same; that defendant was advised of complainant's intention to seek to restrain him from building, and on the 31st of January, 1856, deceived complainant by pretending that he did not intend to erect said stable on the lots near said hotel; that he had determined to erect it on a different lot far removed from said hotel, and had placed lumber for that purpose on said last mentioned lot; which lumber, the bill charges, was removed the next morning by sunrise to the lots near said hotel, and defendant, with a large number of workmen, commenced erecting said stable with a view to complete it before complainant could obtain an injunction—said defendant well knowing that the Judge of the South-Western Circuit, in which said town of Cuthbert is situated, had resigned his office, to take effect on the day defendant commenced building, and it was not known that any successor had been appointed, and said defendant hoping, by thus deceiving complainant, to finish said stable

before such successor could be appointed, and before an injunction could be obtained.

The bill, after alleging that there was no Judge residing in the South-Western Circuit, prays that defendant be enjoined from building said stable.    The bill was sanctioned by Judge Powers on the 2d of February, 1856.    On the 23d of said month, said bill was amended.    The amendment charges that as soon as complainant was apprised that defendant intended to build said stable near said hotel, he went to Talbotton to apply to Judge Worrill for an injunction, and finding him absent, proceeded at once to Macon and procured an injunction from Judge Powers, travelling some 300 miles, going and returning and performing the trip with all possible expedition ; that all the work done towards erecting said stable was done during the two days complainant was absent on said trip to Talbotton and Macon ; that if said stable is permitted to be erected, it will cause complainant great loss of patronage, &c.    The amendment further charges, that said stable was in an unfinished condition when complainant commenced proceedings to procure an injunction ; that what had been done was done hastily and in an unworkmanlike manner, the object of defendant being to get said stable so far done as to be able to use it, believing that if he could do so, complainant's equity would be destroyed and an injunction could not be granted.

On the 25th day of February, 1856, the case was tried before Judge Kiddoo, at Chambers, on a motion by defendant's Counsel to dismiss said bill and dissolve said injunction.

Defendant's Counsel moved to dismiss the bill for the want of equity, and because complainant had obtained said injunction in the character of an inn keeper, and had appended no exhibit showing that he was licensed as such.    The Court over-ruled the motion, and Counsel for defendant excepted. The answer of defendant was then read.    The answer admits that complainant owns the lots he claims to own in the bill, and that he has erected a large hotel on one of them as alleged, used for the purposes specified in the bill ; that it is

situated as alleged, and is an eligible location; that lot 1 and 3 in square 12 have, as defendant is informed, been for a long time the site of a hotel; that said house may receive the patronage the bill alleges, and that it may have cost $6.000; that there is an upper piazza and entrance and comfortable rooms on the east side as alleged, but denies that said hotel is a more comfortable one than others in Cuthbert. The answer admits that complainant uses his house for the purposes alleged, but believes that it is not more free from disturbances than other well kept hotels, and denies that the receipts of the same amount to any such sum as ten thousand dollars. It admits that since complainant entered said hotel, defendant has purchased lots 1 and 2, in square 11, with a view to erect a sale and livery stable thereon; that he has erected (though not completed) such a stable, and also a carriage house, all being under the same roof, and that he designs to occupy the whole of said lots, being about 120 feet square, as alleged in the bill, except that the part of the building erected next the hotel is to be used as a carriage house; that the stable is situated as represented, on the east side of said hotel, but on the opposite side of Box Ankle Street, which is 60 feet wide, and which separates said stable from the hotel.

The answer states that the lots purchased by defendant cost him some $1.400, and the building he has erected thereon (which was erected before the said injunction was granted) cost him about $600; that he had gone to great expense in providing buggies and other accommodations for said stable; that the portion of the building on the line of the street was being used when the injunction was granted, and is intended to be used as a carriage house, being the part nearest to said hotel and running back fourteen feet from the street and extending the full length of the same, and that the building lacks five feet of coming up to the line of the street, thus throwing the stable 79 or 80 feet off from said hotel, the said carriage house being entirely between said stable and hotel and being the full length of the stable; that when served with said injunction, defendant was proceeding to extend said

stable and carriage house the full length of said lots, being
120 feet, the result of .which would have been to throw the
horse lot on the opposite side of said stable from the hotel
and distant therefrom 107 or 108 feet—the carriage house
and stable intervening and excluding all possible view of said
lot from any portion of said hotel. The answer denies that
the erection of said stable, &c. will result in any of the inju-
ries or inconveniences to complainant or his guests specified
in said bill, but believes it would greatly enhance the value
of said hotel. It states that it is to the interest of defend-
ant and is his intention to keep said stable and lot free from
offensive matter, and not permit manure to accumulate for
sale or other purposes, and to keep said stable and lot in a
neat and cleanly manner; that when completed, the entire
outer wall of said carriage house next to and running paral-
lel with said hotel will be weather-boarded and neatly paint-
ed, and that the inner wall of said carriage house separating
the same from the stable, will be entirely closed up with thick
and heavy plank, thus placing two thick walls, in addition to
the width of the street and carriage house, between the stable
and hotel, and preventing any disturbance to complainant
and his guests from any noise made at said stable; that com-
plainant owns a large stable and horse lot and used as such
by him, situate but a few feet farther from said hotel than
the horse lot of defendant, where manure and other offensive
matter has accumulated and lies exposed to the sun and fully
in view of said hotel, calculated to be more offensive to the in-
mates of said hotel, on account of its location, than the pre-
mises of defendant. The answer denies all intention to de-
ceive defendant in reference to where he intended to erect
said stable; states that complainant well knew his intentions
long before he commenced erecting said stable; that ample
opportunity to obtain an injunction from the Judge of the
South-western Circuit, before his resignation took effect; ad-
mits that defendant did, on the day stated in the bill, tell com-
plainant that he had concluded to erect his stable on another
lot, provided he could make a compromise with another par-

ty; but denies that he did so to deceive complainant or that complainant was deceived thereby, complainant having asked him on the evening of the same day not to commence building on said lots 1 and 2 in square 11, and defendant having refused to make such a promise, telling complainant he must look out for himself. The answer states that complainant delayed applying for said injunction, in order to harrass defendant and to put him to expense, and admits that defendant did commence on the day stated in the bill, to erect said stable, before sunrise, being anxious to complete the same.

Defendant's Counsel also read the affidavits of four persons, sustaining some of the statements made in the answer.

The Court permitted complainant's Counsel to read the affidavits of several persons, contradicting parts of defendant's answer; to the reading of which defendant's Counsel excepted, because they had not been tendered with the bill, nor offered before defendant's answer was read.

Defendant's Counsel then moved to dissolve said injunction, alleging that the equity of the bill had been fully sworn off by the answer. The Court over-ruled the motion and defendant excepted. Defendant then proposed to the Court to give complainant bond and security for all damage he might sustain, until a final hearing of said case could be had, and moved the Court to dissolve the injunction until then, on terms equitable to all parties. The Court over-ruled this motion and defendant's Counsel excepted.

Defendant's Counsel now assigns the several rulings of the Court as error.

DOUGLASS & DOUGLASS, PERKINS & NISBET, POE; GRIER, for plaintiff in error.

HOOD & ROBINSON, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

[1.] We think the true rule in such cases is this, namely: that injunctions will only be granted to restrain nuisances, in

cases of absolute necessity, in which the evil sought to be prevented is not only probable, but certain and inevitable.

Moreover, it will be less disposed to interfere, where the apprehended mischief is to follow from such establishments and erections as have a tendency to promote the public convenience. (2 *Ir. Eq. Rep.* 199; *Pick. Rep.* 376; *Daniel's Ch. Pr. note p.* 1850.)

Testing this case by this rule, we think there can be no doubt but that if the carriage house and stables were extended as was contemplated, and the establishment properly kept, that instead of being certain that the stables would be a nuisance, the probability is that it would not be.