ROUNSAVILLE *et al. vs.* KOHLHEIM.

[This case was argued at the last term, and the decision reserved.]

A private stable in a city is not necessarily a nuisance, though erected near the line separating the lot of the owner from that of a neighbor, whose house is near the dividing line. But he who so builds must, at his peril, guard against such construction, as by the ordinary use of the stable would disturb adjacent owners by the noises produced, or against such use thereof as will cause stench or like annoyance upon the property of his neighbor.

(*a.*) Mere allegations of speculative or contingent injuries, with nothing to show that they will in fact happen, do not require an injunction.

JACKSON, C. J., concurred on special grounds.

Nuisance. Equity. Damages. Injunction. Before Judge Underwood. Floyd Superior Court. March Term, 1881.

Reported in the decision.

DABNEY & FOUCHE, for plaintiff in error.

YANCEY & DEAN; J. BRANHAM, for defendant.

CRAWFORD, Justice.

This bill was filed to enjoin the defendant from building a private stable on his own lot, in the city of Rome, adjoining that of the complainant's. The grounds for the application of the injunction were that large quantities of litter, manure and filth will be gathered in said stable; that swarms of flies and other insects, and vermin will be generated therein; that noxious vapors and foul stenches will be generated; that there will be an eternal stamping of horses and lowing of cattle in said stable; and if the defendant is permitted to locate and use said stable at the place upon which he proposes to build it, the injury, inconvenience and damage to the property of complainants will be irreparable.

The bill was dismissed at the hearing for the want of equity, and the only question here is, was that error?

It was ruled in 9 *Ga.*, 425, "That a livery stable within sixty-five feet of a hotel, which would result in the loss of health and comfort of the proprietor's family, and the loss of patronage to his hotel in consequence of the unhealthy effluvia arising therefrom, and the collection of swarms of flies, and the interminable stamping of horses therein, would operate as a nuisance, and that the landlord was entitled to an injunction to restrain its erection."

This ruling was made upon the refusal of the chancellor below to grant an injunction restraining the erection of the building. Upon the coming in of the answer in the same case, denying the main allegations in the bill, and setting up the fact of a removal of the plank floor, and that by the use of lime-water, and keeping the stalls neat and clean, as well as other precautionary measures, that there would be no damage to the complainant resulting from the said stable, the chancellor dissolved the injunction. This ruling by the chancellor brought the case again before this court, as may be seen in 10 *Ga.*, 336, and it

was there held, "That the *ad interim* injunction should not have been removed, but should have been continued to the final hearing." Further, that "If upon the hearing the jury should be of opinion that this stable with its inmates and attendants is not a nuisance of itself, but that it may be kept in such manner as to make it unobjectionable, they will no doubt require that it shall be kept in this manner, or provide adequate protection to the complainant."

This same subject of building a livery stable again came before this court on the granting of an injunction to restrain its erection, and is reported in 20 *Ga.*, 537. It was there held that to enjoin nuisances in the course of erection, that the evil sought to be remedied must not be "merely probable, but certain," and Lumpkin, C. J., in the opinion, adds "inevitable." And further, that if "the establishment were properly kept, that instead of being certain that the stable would be a nuisance, the probability is it would not be."

This brings the rule where we think the law puts it, that livery stables may be so located as to become nuisances; and so may any private stable be so located with reference to the dwellings, or places of business of others, and be so improperly kept and conducted as to become an actionable nuisance. But the mere probability that it will become so is insufficient to deprive the owner of a lot of the right to erect a stable for his own use, although it may be on the line of his lot, and quite near the dwelling of an adjacent owner. It is true that he who thus builds, must at his peril guard against such construction as that its ordinary use would disturb adjacent owners by the noises produced, or manage it in such way as to permit offensive stenches to emanate therefrom, and float over his neighbor's premises to his serious annoyance and discomfort.

Although there are variations in the manner of the different courts in stating the law, we think that this is the

proper legal rule on the subject, as well as that it is the most general one adopted. Wood's Law of Nuisances, §§526, 7-8-9.

It was ruled by the supreme court of Texas in Burditt *et al. vs.* Swenson, 17th vol., 489, " It would seem that a livery stable in a town is not necessarily or *prima facie* a nuisance, but that it depends on whether from the manner in which it is either built, kept or used, it destroys the comfort of persons owning and occupying adjoining premises, or impairs the value of their property."

In 9 Iredell, 244, it was held that, "A stable in a town is not like a slaughter-pen or a hog-sty, necessarily or *prima facie* a nuisance. But if it be so built, so kept or so used as to destroy the comfort of persons owning and occupying adjoining premises, it does thereby become a nuisance, though in itself it be a convenient and lawful erection."

In 11 Humphreys', 407, the court say that, "A livery stable in a town is not necessarily a nuisance in itself, and therefore a court of equity has no jurisdiction to restrain by injunction, either the completion of a building because intended for that purpose, nor its appropriation to the use intended."

In the case of Earl of Ripon *vs.* Hobart, 3 Mylne & Keene, cited in 2 Story's Eq., §924, note 1, Lord Brougham says that, "No instance can be produced of the interposition of courts of equity by injunction in the case of an eventual or contingent nuisance."

If then this be the law in reference to livery stables, the right to build a private one should not be denied, and especially so upon an apprehension that it will become a nuisance. In this case all the allegations except the mere location are speculative and contingent, the bill was therefore without equity, and should have been dismissed. Whilst the building of this stable may not be a kindly or neighborly act, yet with this the courts have nothing to do, they are simply to decide whether in itself it is an unlawful one, and therefore to be suppressed.

To hold that there is equity in this bill, is to hold that the building of a private stable on one's own lot is *per se* a nuisance, and that an adjacent owner may dictate its location upon some other part of the lot, because he has seen fit to build his own house within nine feet of the line. Otherwise, to send it to the jury, would be for them to pass on that which does not yet and may never exist; that is, the manner in which it is to be used, or the manner in which it is to be kept, will make it a nuisance.

Judgment affirmed.

JACKSON, Chief Justice, concurring, said that if one who had sufficient room and can, without injury to himself, locate a stable elsewhere than in immediate proximity to his neighbor's premises, where it will be offensive to the latter, equity will restrain him from so locating it. I concur in the decision on the ground that it does not appear that the defendant could locate the stable elsewhere as well as where he was proceeding to place it.