Hope *et al. v.* Governor's Horse Guard *et al.*

Hines, J. The discretion of the trial judge in refusing to grant an injunction on conflicting evidence will not be interfered with, it not appearing that there was an abuse of discretion.

*Judgment affirmed. All the Justices concur.*

No. 2922. June 15, 1922.

Petition for injunction. Before Judge Pendleton. Fulton superior court. October 31, 1921.

Mrs. C. P. Hope, Mrs. W. F. Wofford, C. G. Gray, and J. G. Johnson filed their equitable petition against Dr. J. O. Seamans,

J. S. Slicer, Governor's Horse Guard, a corporation, and the Pittman Construction Company, in which they allege that they are owners of land, where they reside, located on North Boulevard, near where Piedmont Avenue crosses North Boulevard in Fulton county. They have been living in said vicinity, which is a suburb of the city of Atlanta, for a number of years, and on January 1, 1922, said territory would be within the limits of the city of Atlanta. The Governor's Horse Guard, through said Seamans and Slicer, intend to erect on North Boulevard, about 200 yards north of Piedmont avenue, stables for the purpose of housing about forty head of horses. They are informed that said defendants have contracted with the Pittman Construction Company for the erection of said barn and stables. The erection of said barn and stables upon said street at said place and within the vicinity of their residences would decrease the value of their property, would cause an accumulation of flies, and, " would also cause said vicinity to be annoyed by bad odors from said barn and stables." The vicinity in which said barn and stables are proposed to be built is a strictly residential section, with the exception of a store at the corner of Boulevard and Piedmont avenue. To have a barn with forty head of horses therein in the vicinity of their residences would be accompanied by more or less noise, which would be continuous throughout the day and night. Should said barn and stable be erected, they would not be able to compute their damages in money, and it would be difficult to estimate the same. The erection of said barn and stables would be a continuing nuisance because of the facts hereinbefore stated. If defendants are permitted to erect said barn and stables, petitioners and others in said vicinity would be compelled to file suits for damages, and to restrain the nuisance of maintaining said barn, which would purduce a multiplicity of suits. The defendants are now engaged in grading the land upon which to build said barn; and petitioners are informed that defendants intend to build said barn within twelve hours after the lot is graded. They pray that the defendants be enjoined and restrained from building said barn or horsestables upon said property. The petition was duly verified. By amendment the plaintiffs struck the name of Pittman Construction Company, alleging that C. O. Pittman was the contractor in charge of said work, and prayed that he be made a party defendant. This was done.

The defendants demurred on the ground that the petition set forth no cause of action, and set forth no facts which would authorize the injunction prayed. In their answer the defendants admitted that the Governor's Horse Guard intended to erect the stables, but alleged that the same would be modern, well equipped, and perfectly sanitary in all respects. They admitted that they had contracted with the Pittman Construction Company for the erection of the barns and stables, and that much work had been done thereon. Much material and supplies had been purchased, workmen employed, and they were incurring a great loss and expense. They denied that the value of the plaintiff's property would be diminished by the erection of said barn; that the people in the vicinity would be annoyed by bad odors therefrom; that the vicinity in which the barn and stables are to be erected is a strictly residential section; that the erection of the structure would cause more or less noise which would be continuous throughout the day and night; that plaintiffs' damages would be irreparable; and that the barn and stables would be a continuing nuisance, or a nuisance at all. They alleged that said barn and stables are to be built in in a perfectly clean and sanitary condition, that the same will not be a nuisance, and will not be offensive to the people in the neighborhood; that they have been at a great expense in grading said lot; that material and supplies have been purchased; that a contract has been let for the building of the barn; that a large number of horses have been supplied, and are now being kept at great inconvenience and expense. Unless a stable is erected, the Government will take back its horses, and horse guards will have to be disbanded. The location of the stables is on an unpaved road, out of the city limits in the country, surrounded by woods, in a neighborhood where dairies, cows, horses, and other animals are kept. The United States government furnishes four expert men to keep the stable in good condition. The answer was duly verified.

The plaintiffs introduced evidence tending to prove the allegations of their petition. The defendants introduced the affidavit of J. S. Slicer, the captain of the Governor's Horse Guard, in which he deposed: Under the United States Army regulations, the State of Georgia is provided equipment and pay for three cavalry troups, one at Savannah, one at Hinesville, and one at

Atlanta. The Governor's Horse Guard was organized and mustered into service on May 31, 1921. It was hard to organize this cavalry troup, but he finally succeeded in getting enough men to enlist to meet the requirements of the Federal militia regulations. Said cavalry troup is supported by the national government, and furnishes the equal of sixty-five or more mounted police on hand at the call of the city, county, or State, for the protection of property and person. The United States government furnishes thirty-two horses, feeds the same, and allows so much pay monthly for the employment of four men to look after the horses. The thirty-two horses provided by the United States government arrived at Atlanta at 3 o'clock on October 26. They have to be temporarily quartered in stables which are not fitted for the purpose; and unless suitable stables can be erected, which can be approved and accepted by officers of the United States army, the troup will lose the horses. When it is necessary for the entire troup to be called out, the government provides for the hiring of a sufficient number of horses to mount the entire troup. The United States government has already obtained a captain from the regular army, a graduate from West Point, to instruct the cavalry of Georgia; and that officer and the first sergeant from the regular army are now in Atlanta. These officers will constantly inspect the stables under the government's requirements. These stables have to be kept sanitary in every way. They have to be clean at all times. All refuse from the stables has to be carried away each day; and it is absolutely against the regulations for the stables to be kept in such a manner that there will be any flies around the stables. Under the constant inspection of these two army officers it will be absolutely necessary for the troup to keep the stable in such a condition that it can not be obnoxious to any one. It will be run in such a manner as not to annoy any one. It will be a protection to the neighborhood in which it is located. There is not a house within 300 feet of the stables.

The court, after hearing the evidence and argument of counsel, passed an order denying the application for injunction and dissolving the restraining order previously granted. To this ruling the plaintiffs excepted.

*Walter A. Sims,* for plaintiffs.

*Reuben R. Arnold* and *Lowry Arnold,* for defendants.