## STANDARD OIL COMPANY *et al. v.* KAHN.

1. A filling-station is not per se a nuisance.
2. The allegations of the petition do not show that the filling-station which the plaintiff seeks to enjoin the defendants from erecting will be so erected or operated as to make the same a nuisance.
3. The court below erred in overruling the demurrer to the petition.

No. 6155. JANUARY 11, 1928. REHEARING DENIED FEBRUARY 20, 1928.

Injunction. Before Judge Custer. Mitchell superior court. June 15, 1927.

*Gardner, Gardner & Crow,* for plaintiffs in error.

*E. M. Davis,* contra.

HINES, J. 1. Is a filling-station a nuisance per se? The following businesses are not nuisances per se: Public livery-stables, *Harrison* v. *Brooks,* 20 *Ga.* 537, *Hope* v. *Governor's Horse Guard,* 153 *Ga.* 633 (113 S. E. 189); guano depots, *Huff* v. *Phillips,* 50 *Ga.* 130; blacksmith-shops, *Whitaker* v. *Hudson,* 65 *Ga.* 43; private stables in residential sections of cities, *Rounsaville* v. *Kohlheim,* 68 *Ga.* 668; (45 Am. R. 505); county jails, *Bacon* v. *Walker,* 77 *Ga.* 336; municipal prisons, *Long* v. *Elberton,* 109 *Ga.* 28 (34 S. E. 333, 46 L. R. A. 428, 77 Am. St. R. 363); cemeteries, *Harper* v. *Nashville,* 136 *Ga.* 141 (70 S. E. 1102); magazines for the storage of explosives, *Simpson* v. *DuPont Powder Co.,* 143 *Ga.* 465 (85 S. E. 344, L. R. A. 1915E, 430); cotton ginneries, *Tate* v. *Mull,* 147 *Ga.* 195 (93 S. E. 212, 3 A. L. R. 310), *Pitner* v.

---

Nuisances, 29 Cyc. p. 1153, n. 10; p. 1174, n. 1 New; p. 1241, n. 91.

*Shugart,* 150 *Ga.* 340, 341; crematories, *City of Quitman* v. *Underwood,* 148 *Ga.* 152 (96 S. E. 178) ; laundries, *Holman* v. *Athens Empire Laundry Co.,* 149 *Ga.* 345 (100 S. E. 207, 6 A. L. R. 1564) ; water grist-mills, *Gray* v. *Chason,* 158 *Ga.* 313 ; retail grocery stores, *Smith* v. *Atlanta,* 161 *Ga.* 769 (132 S. E. 66) ; garages for repairing and vulcanizing automobile tires, *Morrow* v. *Atlanta,* 162 *Ga.* 228 (133 S. E. 345). The erection and operation of gasoline filling-stations in residential districts are legal, and under the authorities hereafter cited they are not nuisances per se. In *Dillard* v. *Gulf Refining Co.,* 159 *Ga.* 425 (125 S. E. 862), this court affirmed the judgment of the lower court refusing, upon conflicting evidence, to enjoin the erection of a gasoline filling-station. In rendering that decision this court necessarily held that the erection and operation of a gasoline filling-station is not per se a nuisance. The erection and operation of such stations being lawful, the courts have necessarily held that their erection and operation are not nuisances per se. Sander *v.* Blytheville (Ark.), 262 S. W. 23; Des Moines *v.* Manhattan Oil Co., 193 Iowa, 1096 (23 A. L. R. 1322, 184 N. W. 823, 188 N. W. 921) ; Julian *v.* Golden Rule Oil Co., 112 Kan. 671 (212 Pac. 884) ; National Refining Co. *v.* Batte, 135 Miss. 819 (100 So. 388, 35 A. L. R. 91) ; Brown *v.* Easterday, 110 Neb. 729 (194 N. W. 798) ; Hanes *v.* Carolina Cadillac Co., 176 N. C. 350 (97 S. E. 162) ; Texas Co. *v.* Brandt, 79 Okla. 97 (191 Pac. 166) ; Electra *v.* Cross (Tex. Civ. App.), 225 S. W. 795; Lewis *v.* Berney (Tex. Civ. App.), 230 S. W. 246. A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. *Simpson* v. *DuPont Powder Co.,* supra; 29 Cyc. 1153. There can be no question about the proposition that a gasoline filling-station is not a nuisance per se.

2. But buildings may be so erected and businesses so conducted as to be nuisances, although they are not nuisances per se. This is true of the erection and operation of gasoline filling-stations. For instance, if this filling-station were so built as to discharge, when in operation, oil and greasy waters upon the near-by lot of the plaintiff; or if the erection of this filling-station and the driveway thereto were made in such a way as to constantly cause the headlights of automobiles entering such driveway to shine upon and into the plaintiff's dwelling, so as to disturb or prevent the

sleep of the inmates, the erection of the station to be so operated might amount to a nuisance. National Refining Co. *v.* Batt, supra. What are the facts alleged by the plaintiff to show that the erection and operation of this filling-station will create a nuisance? They are these: The filling-station is near the residence of plaintiff, being located on the opposite side of a fifty-foot street, not more than eighty feet from the southwest corner of his lot, and not more than one hundred and twenty feet from the corner of his residence. It is being erected upon vacant property owned by the Atlantic Coast Line Railroad Company, and lying adjacent to the station of said company in Pelham. This vacant property afforded a splendid view of the business section of the town from plaintiff's residence. In recent years this vacant property has been beautified by the City of Pelham and its civic clubs, and is used as an open space or park. The erection of this filling-station will deprive plaintiff of his splendid view of the business section of the town and the use of the vacant property as a park. While plaintiff contemplated that the railroad company might some day use some portion of this vacant property for the legitimate and necessary purposes connected with its railroad requirements, he did not contemplate that the company would subject it to uses destructive of property values and the health and comfort of the residents of Pelham who built their homes on the opposite side of the street from said property. The homes of petitioner and others will be depreciated by the building of this service-station, and the value and attractiveness thereof will be greatly reduced. It will create a noisy and undesirable center, and will cause all these residences to be undesirable for residential purposes. At said station gasoline and oil will be sold to automobiles and trucks at all hours of the day and night. These sales will be accompanied by noisome, offensive, and disagreeable odors, and by many disagreeable noises which continually go on around and near filling-stations at all hours of the day and night, including the noises incident to changing the tires and rims of automobiles and trucks. The operation of said filling-station so near the front of his house will endanger the lives of his small children, by reason of the constant passing of trucks and automobiles. Other dangers, such as sudden fires, will attend the operation of the filling-station. The transfer of gasoline from tanks to automobiles and trucks, and from trucks

37

to storage-tanks, carries with it constant danger of explosions, which will be dangerous to plaintiff, his children; and others occupying houses near by. Fire-insurance rates on his property and that of others in the neighborhood will be increased. The erection and operation of said filling-station will create so many noises and disturbances as to deprive him and his family of sleep, and thus will result in endangering their health, besides destroying their peace and happiness, and it will result in a multiplicity of suits to prevent the operation of the same. The noises referred to are loud, roaring noises, made by the exhaust and back-fire of automobile and truck engines produced by the explosion of gasoline therein, and the loud roaring noises of automobiles and trucks going into and stopping at gasoline filling-stations, and the noises produced by changing tires, by beating and striking the same with large hammers and other irons, and also the usual loud talking and some times hilarious laughter of employees, customers, and others who some times congregate at gasoline filling-stations. By reason of the unusual noises and odors and the dangers of fires and explosions incident thereto, the operation of this filling-station will constitute an invasion of his property rights in his home, and will be a continuing invasion of such rights. Will these facts render the operation of this filling station a nuisance?

We have seen that the erection and operation of gasoline filling-stations are not nuisances because they are erected in residential sections, and in close proximity to residences. In *Smith* v. *Atlanta,* supra, a party was erecting retail stores in front of residences on the opposite side of a narrow street, and adjacent to a residence upon the side of the street on which the stores were being erected. Many of the objections urged to the erection of this gasoline filling-station were urged against the erection of these stores; and yet this court held that these stores were not nuisances per se. The erection of a filling-station is just as lawful as the erection of retail stores. Besides, in the case cited, the stores were being erected in a district which had been zoned for residences alone. It can hardly be seriously urged that the deprivation of plaintiff's view of the business section of his town by the erection of this structure will amount to a nuisance. The erection of buildings often destroys views. We have been able to find no case where such deprivation renders them nuisances. They often deprive ad-

joining owners of light and air passing over the lots on which they are built; but this does not make them nuisances. Civil Code (1910), § 3618. It not being alleged that the railroad company had dedicated to the public as a park the vacant property on which this structure is sought to be built, the erection of this filling-station thereon does not deprive the plaintiff of any property right or easement in this vacant property, and does not render the filling-station a nuisance. Depreciation of the value of plaintiff's property, and the increase in insurance rates thereon by reason of the erection of this filling station, does not render the same a nuisance. *Holman* v. *Athens Empire Laundry Co., Smith* v. *Atlanta,* supra. Does the allegation that the operation of this filling-station will be accompanied by offensive and disagreeable odors, and by the disagreeable noises which continually go on around and near filling-stations at all hours of the day and night, including the noises incident to the changing of tires and rims of automobiles and trucks, show that the operation of this plant will amount to a nuisance? The articles sold at these stations are oil and gasoline. We must apply, in determining whether the allegation that these articles emit offensive and disagreeable odors is well founded, common sense and common experience; and judging of this allegation by the application of common sense and common experience, we can not hold that the odors arising from these articles are so offensive and disagreeable as to render the operation of this filling-station a nuisance. Besides, it is not alleged that these odors will enter the residence of petitioner.

We deal next with the allegation that the operation of this filling-station will create so many noises and disturbances as will deprive petitioner and his family, including his small children, of sleep, and will thus endanger their health and destroy their peace and happiness by the destruction of the quietude of their home. Petitioner alleges that these noises will arise in two ways, one from the back-fire of automobile and truck engines, and the other from the beating and striking, with hammers and other irons, of the rims of automobile and truck wheels in removing and putting on tires. Petitioner denominates such noises as "loud, roaring noises." In the first place, the noises arising from the back-fire of automobile and truck engines will not arise from the operation of this filling-station. They spring from the operation of automobiles and

trucks. They occur with or without filling-stations. But it may be said that more automobiles will be induced to travel the street in front of the residence of petitioner, from the fact of the operation of this filling-station. This, however, is not alleged in the petition. As said above, in determining this feature of the case, we must apply common sense and common experience. None of these noises are alleged to be unnecessary and unreasonable. They are the ordinary noises incident to the operation of filling-stations. Those arising from the back-fire of engines are not due to the operation of the filling-station but to the operation of automobiles and trucks. It is true that some noises may be created by taking off and putting on tires; but, as we have seen, these noises are necessary incidents of this work. Petitioner describes both classes of these noises as "loud, roaring noises." But we can not hold that this designation is apt and correct. Some noise will attend the taking off and putting on of tires at this station; but they are not necessarily so loud and so roaring as to disturb the sleep of petitioner and his family in his residence. It involves some stretch of the imagination and undue apprehension to hold that these noises will so disturb the sleep of petitioner and his family as to impair their health. We do not think that the ordinary use of a filling-station is so serious a matter as to disturb the sleep of nearby residents, and impair their health. The usual noises incident to its operation do not have such direful results. We do not mean to hold that noises may not become nuisances. In *Mygatt* v. *Goetchins,* 20 *Ga.* 350, Judge Lumpkin said: "We know of no sound, however discordant, that may not, by habit, be converted into a lullaby, except the braying of an ass or the tongue of a scold." In *Hill* v. *McBurney Oil &c. Co.,* 112 *Ga.* 788 (38 S. E. 42, 52 L. R. A. 398), this court found itself unable to agree with the above strong statement of Judge Lumpkin. In that case this court held that the blowing of a factory whistle in a populous residence community, at unreasonable hours and when it was entirely unnecessary, and in a manner so loud, harsh, and terrific as to destroy plaintiffs' slumbers, injure their health, and seriously interfere with the reasonable enjoyment of their habitations, was a nuisance which a court of equity would enjoin. The case cited is very different from the case at bar. From common experience we know that the noises of which the plaintiff complains, and which

are incident to the usual and reasonable operation of a filling-station, are not such as to destroy sleep and impair health.

Again, petitioner complains that the operation of automobiles to and from this filling-station will endanger the lives of his children. This is a danger arising from the operation of automobiles, and not from the operation of this filling-station. Again, petitioner alleges that there is danger of explosions arising from the transfer of gasoline from trucks to tanks and from tanks into automobiles and trucks, and that such explosions will endanger the lives of himself and family. Plaintiff's apprehension of danger from this source is too remote and contingent to authorize us to declare this structure a nuisance. In order to justify us in declaring such filling-station a nuisance upon this ground, the alleged consequences must not be "merely possible, but to a reasonable degree certain." Civil Code (1910), § 4459. Again, "The inconvenience complained of must not be fanciful, or such as would affect only one of fastidious taste, but it must be such as would affect an ordinary reasonable man." Civil Code (1910), § 4457. Mere apprehension of inconveniences arising from a filling-station in course of construction, the same being for a lawful business use, is not sufficient to authorize an injunction. *Richmond Cotton Oil Co.* v. *Castellaw,* 134 *Ga.* 472 (67 S. E. 1126). Before we would be justified in declaring this filling-station a nuisance, the effect of its construction and operation must be such as to sensibly diminish the comfortable enjoyment by petitioner of his residence, either by actual, tangible injury to the property itself, or by the promotion of such physical discomfort, as detracts sensibly from the ordinary enjoyment of life. *Holman* v. *Athens Empire Laundry Co.,* supra. From an inspection of the record in *Morrow* v. *Atlanta,* supra, it would appear that the inconveniences complained of from the operation of the garage involved in that case were much more serious than the inconveniences complained of in this case; and we held that the facts alleged did not constitute a nuisance which should be suppressed. We feel sure that the dire consequences which plaintiff apprehends will not arise from the erection and operation of this filling-station. We feel sure that the sleep of petitioner and his family will not be seriously disturbed from the noises incident to and usual in the operation of filling-stations, and that their health will not thereby be undermined.

The fear of the other evil consequences which he predicts is not well founded. So we are of the opinion that under the allegations of the petition the plaintiff does not make out a case, and that the trial judge erred in not sustaining the demurrer.

3. It follows necessarily that the court below erred in granting the interlocutory injunction.

*Judgment reversed. All the Justices concur.*

ATKINSON and GILBERT, JJ., concurring specially. We concur in the judgment, but do not wish to be committed to all that is said in the opinion by way of argument; for example, that in such cases gasoline filling-stations stand upon the same footing as retail stores. We deem it best to approach each case on the facts and circumstances of that particular case, unembarrassed by comparisons which are not necessary.