WILSON *et al. v.* EVANS HOTEL COMPANY *et al.*

No. 12866. June 14, 1939. Adhered to on rehearing, July 15, 1939.

Lester F. Watson and R. Earl Camp, for plaintiffs in error.

C. C. Crockett, contra.

GRICE, Justice. The assignments of error relate to the overruling of a general demurrer to the petition, and to the grant of an interlocutory injunction. It is to be inferred from statements contained in the bill of exceptions that on the hearing testimony was taken; but no evidence was brought to this court. We must therefore act on the assumption that there was evidence before the judge which supported the allegations of the petition; and the only question presented for our decision in the second exception is whether, conceding that the petitioners proved their case, they were entitled to the interlocutory injunction which was granted. The first exception raises a kindred issue, to wit, should the petition have been dismissed on general demurrer?

A filling-station is not per se a nuisance. *Standard Oil Co.* v. *Kahn,* 165 *Ga.* 575 (141 S. E. 643) ; *Howell* v. *Board of Commissioners of Quitman,* 169 *Ga.* 74 (3) (149 S. E. 779) ; *City of Hawkinsville* v. *Williams,* 185 *Ga.* 396 (195 S. E. 162), and cit. Nor are garages for repairing and vulcanizing automobile tires. *Morrow* v. *Atlanta,* 162 *Ga.* 228 (133 S. E. 345). A nuisance per se is an act, occupation, or structure which is a nuisance at all times and under all circumstances, regardless of location or surroundings. *Simpson* v. *DuPont Powder Co.,* 143 *Ga.* 465 (85 S. E. 344, L. R. A. 1915E, 430). The erection and operation of gasoline filling-stations are not nuisances because they are erected in residential sections and in close proximity to residences. *Standard Oil Co.* v. *Kahn, City of Hawkinsville* v. *Williams,* supra. Where the business alleged to be a nuisance is lawful, and can be carried on without the injuries complained of, the defendant should not be restrained from carrying it on at all, but should be restrained from so carrying it on as to be injurious and offensive, leaving him the right to carry it on in a proper manner. *Georgia R. &c. Co.* v. *Maddox,* 116 *Ga.* 64 (42 S. E. 315) ; *Pig'n Whistle Sandwich Shops Inc.* v. *Keith,* 167 *Ga.* 735 (146 S. E. 455) ; *Warren Co.* v. *Dickson,* 185 *Ga.* 481, 484 (195 S. E. 568). In *Holman*

v. *Athens Empire Laundry Co.*, 149 *Ga.* 345 (100 S. E. 207), it was said: "Every one has the right to use his property as he sees fit, provided that in so doing he does not invade the rights of others unreasonably, judged by the ordinary standards of life and according to the notions of reasonable men. The right to use one's property as he pleases implies a like right in every other person; and it is qualified by the doctrine that the use in the first instance must be a reasonable one. The maxim is sic utere tuo ut alienum non laedas. . . That the business itself is offensive to others, or that property in the neighborhood of such business is necessarily adversely affected thereby, or that persons of fastidious taste would prefer its removal, is not sufficient. Applying the foregoing principles to the case in hand, the defendant may make any use of its property, and carry on any business not per se a nuisance, that produces no unnecessary, unreasonable, unusual, or extraordinary impregnation of the air with smoke or soot, to the sensible inconvenience and discomfort of plaintiff's tenants, or to the actual, tangible, and substantial injury of plaintiff's realty." The injuries and inconveniences to persons residing near this fillingstation, such as noises, etc., which result ordinarily and from necessity in the conduct of their business of repairing cars, trucks, and tires, are not to be classed as nuisances. Compare *Austin* v. *Augusta Terminal Ry. Co.*, 108 *Ga.* 671 (34 S. E. 852, 47 L. R. A. 755); *Georgia R. &c. Co.* v. *Maddox*, supra; *Thrasher* v. *Atlanta*, 178 *Ga.* 514, 520 (173 S. E. 817, 99 A. L. R. 158).

We are of the opinion that so much of the interlocutory order as prohibited the defendant from working on cars, trucks, and tires between the hours of 11 p. m. and 6 a. m., except on Saturday nights when the hours are 12 to 6 a. m., was erroneous. Working on and repairing automobiles, trucks, and tires is a lawful business, and none the less so because conducted between the hours of 11 p. m. and 6 a. m. Being a legitimate business in which the defendants were engaged, the court erred in enjoining them from using the property between the specified hours for the purposes stated, or from engaging in the work indicated above. *Morrow* v. *Atlanta*, supra. Nothing contrary to what is here ruled was decided in *Hill* v. *McBurney Oil & Fertilizer Co.*, 112 *Ga.* 788, 793 (38 S. E. 42, 52 L. R. A. 398), *Warren Co.* v. *Dickson*, supra, or *Poole* v. *Arnold*, 187 *Ga.* 734 (2 S. E. 2d 83). If anything in-

consistent herewith was held in *Hunnicutt* v. *Eaton,* 184 *Ga.* 485 (191 S. E. 919), that case will not be followed. The three cases last cited dealt, not with essential occupations, but with amusements and pastimes. In *Hill* v. *McBurney Oil & Fertilizer Co.,* supra, this court had before it a case of enjoining the blowing of a steam whistle at a manufacturing plant situated in a populous residence community. The court there found that the blowing of the whistle in the manner shown was unnecessary; but Chief Justice Simmons, after quoting our Code section defining a nuisance, added: "This, we think, is not intended to change the common-law definition of a nuisance, and is sufficient, in any case, to include the blowing of a large steam whistle, in a populous residence community, with so loud, harsh, and terrific a sound as to destroy plaintiffs' slumbers, injure their health, and seriously interfere with their reasonable enjoyment of their habitations. Certainly it is a nuisance, under the code definition or any other we have seen, to blow such a whistle in such a manner at unreasonable and unseasonable hours and without reason or necessity therefor; and that is the case made out by the petition and the evidence of the plaintiffs. See, in this connection, 2 Wood, Nuisances, § 613 et seq." Since in the *Hill* case the court expressly ruled that the blowing of the whistle in the manner shown was unnecessary, that decision is not authority for the contention that the noise from the whistle was a nuisance, regardless of the manner in which the blowing was done, or the necessity therefor. *Hunnicutt* v. *Eaton,* supra, was a decision by four Justices, and involved the operation of a "saloon, roadhouse, resort, and dancing place." It appeared that people congregated there at night, and remained there "throughout the night drinking, cursing, fighting, using vulgar, profane, and obscene language." The majority of the court was of the opinion that the evidence was sufficient to authorize a finding that the defendant was operating a lawful business in such a manner that it became a nuisance per accidens. The minority opinion stated that the judge should not have enjoined the operation of the business in its entirety, but should have specified the acts found objectionable.

In *Warren Co.* v. *Dickson,* supra, this court had under consideration a demurrer to a petition in a suit for injunction against the operation of a baseball park at nights and Sundays, and ruled that

the trial court properly overruled the general demurrer to the petition in its allegations as to late-night noise in a residential section of the city. In the opinion it was said: "The playing of ordinary games of baseball, or the operation of a park for such games, in a lawful, decent, and orderly manner, and accompanied only by the usual cheers and noise of spectators, where these contests are harmlessly played and enjoyed, is not a nuisance per se. Such games or pursuits may, however, become a nuisance *per accidens,* where there is indecent, disorderly, or improper conduct of the players or spectators; and where, in a residential community, there is accompanying noise, which is excessive and unreasonable, or *which recurs at unusual and unreasonable hours of night,* so as to prevent the sleep of ordinary normal, reasonable persons of the neighborhood." In *Poole* v. *Arnold,* supra, this court affirmed the grant of an injunction against the operation of a sandwich stand and bowling alley at a place within a residential section of a county. The injunction was sought on two grounds: first, the loud and violent noises which interfered with the peace and quiet of plaintiffs in their homes; and second, the operation of such an establishment without a permit, in violation of the act approved March 30, 1937. This court there ruled: "As against the general ground of the demurrer, and regardless of any question as to permit, the petition stated a cause of action for injunction to restrain a continuation of the alleged loud and violent noises by which the plaintiffs were disturbed in the peace and quiet of their homes at night." Elsewhere in the opinion it was said: "Regardless of any issue as to the obtaining of such permit, under the pleadings and the evidence the judge was authorized to grant the interlocutory injunction for the purpose of preventing disturbance of the plaintiffs in their homes by the noises complained of." In the *Dickson* case, supra, it was alleged that the noise by the spectators at the baseball park owned and conducted by the defendant was excessive and unreasonable; and in the *Poole* case it was alleged that, "In addition to the noise of the bowling that is necessarily incident to the conduct of this establishment of the defendant, as a matter of fact there is actually continually present a constant clamor of automobile horns and screeching of brakes, and the loud cries and noises incident to persons engaged in the pastime of bowling, all of which is disturbing and irritating to the plaintiffs and has the effect of rendering their property less valuable and desirable."

None of the four cases last cited is controlling of the question whether, as in the instant case, an injunction may be granted to prevent the business of conducting, between the hours of 11 p. m. and 6 a. m., a filling-station and a garage for repairing and vulcanizing automobile tires in a residential area, because of the normal and necessary noises incident to such business, loud and frequent, work annoyance, inconvenience and injury to persons owning and occupying near-by residences, disturbing their rest, comfort and sleep, and actually depreciating the value of their property.

Blackstone's definition of a nuisance, "anything that worketh hurt, inconvenience, or damage" (2 Blackstone's Com. 216), has throughout the years' been subjected to many qualifications and limitations. For instance, in *City of Quitman* v. *Underwood,* 148 *Ga.* 152 (96 S. E. 178), it was said: "Where the business itself is legal, it only becomes a nuisance when conducted in an illegal manner, to the hurt, inconvenience, or damage of another." In 46 C. J. 645, the statement is made that "In legal phraseology, the term 'nuisance' is applied to that class of wrongs that arise from the unreasonable, unwarrantable, or unlawful use by a person of his own property," etc. On page 657 a long list of authorities is cited in support of the text that "One who uses his property or conducts his business in a lawful and proper manner does not create an actionable nuisance, against which relief may be had, merely because the particular use or conduct which he chooses to make of it may cause some inconvenience or annoyance in the neighborhood." There are many noises encountered by one residing in a city that are absent in the rural sections. There are annoyances in the down-town part which are not found in the suburbs. One who chooses to reside in thickly settled area must not expect the quietude of the woods. From the decisions collected in the notes, the authors of Corpus Juris deduce the rule that "A person who lives in a city, town, or village must of necessity submit himself to the consequences and obligations of the occupations which may be carried on in his immediate neighborhood, which are necessary for trade and commerce, and also for the enjoyment of property and the benefit of the inhabitants of the place; and matters which, although in themselves annoying, are in the nature of ordinary incidents of city or village life can not be com-

plained of as nuisances." 46 C. J. 669, § 34. Locomotives, street-cars, and motor-trucks sometimes invade residential sections; but could their movement at night be enjoined on the ground that the necessary noises made by their operation were an annoyance and prevented sleep? A considerable part of the commerce of this State moves in trucks. Many people use their own cars for legitimate purposes. The owners of these vehicles have an interest in the location of the service garages. Is the convenience of the owners of near-by residences and hotels to be alone considered? Since a business of the kind here involved has been held not to be a nuisance per se, but recognized as lawful and useful, as indeed it is highly necessary to the public, we decline to follow the rule announced in some jurisdictions that its operation in a residential district will as a matter of course be enjoined as a nuisance.

In *Bacon* v. *Walker*, 77 *Ga.* 336, 338, it was said: "It is true that nobody would be pleased at the erection of a jail in the vicinity of his residence, but it must be built somewhere. It is a public necessity. It is authorized by law. In no sense, or rather in no legal sense, is it a nuisance. Nothing that is legal in its erection can be a nuisance per se; much less can that which public necessity demands be one." In *Austin* v. *Augusta Terminal Co.*, supra, may be found this statement: "If a great manufacturing plant had been erected on the adjoining lot, the market value of plaintiff's house might have been greatly injured, no matter how silent the operations of the mill. Properly conducted, decently appointed, and orderly managed stores, shops, factories, and business houses, erected in close proximity to residential quarters, frequently cause great depreciation in values; in the popular sense they cause damage, but in such cases the annoyances, the inconveniences occasioning the loss in value, are not actionable, because they arise from lawful uses. The owners of these establishments are as much entitled to the use and enjoyment of their property as is the owner of the residence property reduced in value by their presence." We can not shut our eyes to the fact that hundreds upon hundreds of motor trucks, and thousands upon thousands of automobiles, travel over highways day and night, or profess ignorance of the fact that accidents will happen to the tires in the night as well as in the daytime. Garages to repair and replace these are not only a great convenience to the traveling public, but a practical necessity. That

the work of repairing and replacing them is accompanied by noise which disturbs the rest and repose of those occupying near-by hotels and apartment-houses, noise that is not unreasonable, unwarranted, or excessive, but noise that is necessary, does not characterize the business as a nuisance per accidens. The business of repairing tires is just as lawful as that of operating a hotel or an apartment-house, and the operator of the one has the same right to operate at night as have those who bring this complaint. In *Harrison* v. *Brooks*, 20 *Ga.* 537, Judge Lumpkin, referring to the court's injunctive power as to nuisances, observed that equity will be less disposed to interfere where the apprehended mischief is to follow from such establishments and erections as have a tendency to promote the public convenience. A livery-stable was there involved. Here we have a business of which it also could be said that it tends to promote the public convenience.

*Standard Oil Co.* v. *Kahn*, supra, involved a garage near the residence of the complainant. It was there alleged: "The homes of petitioner and others will be depreciated by the building of this service-station, and the value and attractiveness thereof will be greatly reduced. It will create a noisy and undesirable center, and will cause all these residences to be undesirable for residential purposes. At said station gasoline and oil will be sold to automobiles and trucks at all hours of the day and night. These sales will be accompanied by noisome, offensive, and disagreeable odors, and by many disagreeable noises which continually go on around and near filling-stations at all hours of the day and night, including the noises incident to changing the tires and rims of automobiles and trucks." Also: "The erection and operation of said filling-station will create so many noises and disturbances as to deprive him and his family of sleep, and thus will result in endangering their health, besides destroying their peace and happiness, and it will result in a multiplicity of suits to prevent the operation of the same. The noises referred to are loud, roaring noises, made by the exhaust and back-fire of automobile and truck engines produced by the explosion of gasoline therein, and the loud roaring noises of automobiles and trucks going into and stopping at gasoline filling-stations, and the noises produced by changing tires, by beating and striking the same with large hammers and other irons, and also the usual loud talking and sometimes hilarious laughter of

employees, customers, and others who sometimes congregate at gasoline filling-stations. By reason of the unusual noises and odors and the dangers of fires and explosions incident thereto, the operation of this filling-station will constitute an invasion of his property rights in his home, and will be a continuing invasion of such rights." In the opinion it was remarked: "As said above, in determining this feature of the case we must apply common sense and common experience. None of these noises are alleged to be unnecessary and unreasonable. They are the ordinary noises incident to the operation of filling-stations. Those arising from the backfire of engines are not due to the operation of the filling-station but to the operation of automobiles and trucks. It is true that some noises may be created by taking off and putting on tires; but, as we have seen, these noises are necessary incidents of this work. Petitioner describes both classes of these noises as 'loud, roaring noises.' But we can not hold that this designation is apt and correct. Some noise will attend the taking off and putting on of tires at this station; but they are not necessarily so loud and so roaring as to disturb the sleep of petitioner and his family in his residence. It involves some stretch of the imagination and undue apprehension to hold that these noises will so disturb the sleep of petitioner and his family as to impair their health. We do not think that the ordinary use of a filling-station is so serious a matter as to disturb the sleep of near-by residents, and impair their health. The usual noises incident to its operation do not have such direful results."

In the *Kahn* case the grant of an interlocutory injunction preventing the erection of the filling-station was reversed. *Wooten* v. *Smith,* 167 *Ga.* 256 (145 S. E. 446), was a case similar to the *Kahn* case. There a service-station was about to be erected near Smith's residence. The petition contained the allegation that "the erection and running of a service-station on same for the selling of gasoline, oil, washing cars, and mending tires, and such garage work, escaping odors from gasoline, oil, rubber, and noise and crowds around same is a nuisance and renders complainant's residence unfit for habitation; and this complaint is brought to enjoin said nuisance." It was there held that the judge erred in enjoining the defendant from operating the station. In the opinion, referring to the decision in the *Kahn* case, Russell, C. J., observed:

"That ruling settles the law of this case." It is true that both the *Kahn* and the *Wooten* cases dealt with anticipated injuries, and not those which, as here, were alleged to be in existence. Both the reversals in those two cases of the grants of interlocutory injunctions were not, however, placed on any such basis. In each of the cases the decision was put on the ground that the operation of the station, under the facts alleged, would not constitute the same a nuisance.

On the question whether the business of conducting an automobile garage, or a supply station for automobiles, where tires are repaired, is a nuisance per se, when conducted in a residential district, the authorities in other jurisdictions are in conflict, though the weight of authority is said to be against holding such business to be a nuisance, even when conducted in a residential section. "The business of conducting an automobile garage, or a supply station for automobiles, even in a residential district, is not generally regarded by the courts as a nuisance per se, and on the contrary is considered a legitimate and necessary industry." 7 Blashfield's Cyclopedia of Automobile Law, § 4881 et seq., where many cases are cited. See also annotations to the reports of the cases of National Refining Co. *v.* Batte, in 35 A. L. R. 91, 95; George *v.* Goodavick, in 50 A. L. R. 105, 107. Typical of those holding that such a business thus located is a legitimate and necessary industry, and its necessary noises must be endured, are Brown *v.* Easterday, 110 Neb. 729 (194 N. W. 798); Haynes *v.* Carolina Cadillac Co., 176 N. C. 350 (97 S. E. 162); Gillette *v.* Tyson, 219 Ala. 511 (122 So. 830); Nevins *v.* McGavock, 214 Ala. 93 (106 So. 597); Texas Co. *v.* Brandt, 79 Okla. 97 (191 Pac. 166); True *v.* McAlpine, 81 N. H. 314 (125 Atl. 680); Sherman *v.* Livingstone, 128 N. Y. Supp. 581; Brown *v.* Powell, 92 Ind. 467 (176 N. E. 241). Among those to the contrary are Ladner *v.* Siegel, 296 Pa. 579 (146 Atl. 710); Huddleston *v.* Burnett, 172 Ark. 216 (287 S. W. 1013); Lewis *v.* Berney (Tex. Civ. App.), 230 S. W. 246. We believe the former the sounder view, and more in harmony with prior rulings of our court on kindred issues. "In this era of good roads, with the constant improvement of our highways, the use of the automobile as a means of transportation is bound to increase accordingly. The mechanism of motor cars is complicated, repairs must be made by skilled mechanics, and cars must

be housed. Public garages have become a necessity." Sherman v. Livingstone, supra.

■ Was it erroneous not to dismiss the action on general demurrer? "A general demurrer to a petition will not be sustained if the facts entitle the plaintiff to any of the substantial relief prayed." *Shingler* v. *Shingler,* 184 *Ga.* 671, 672 (192 S. E. 824), and cit. The petition in one place refers to the excessive noises, and contains this further clause: "But since the petitioners have remonstrated as to the excessive and unreasonable noises in the work on the tires and trucks stated in the preceding paragraph, other disturbances and noises have arisen in connection with this service of oil and gas that are unnecessary and unreasonable, and constitute a nuisance in themselves as to adjoining property owners and especially your petitioners." Also there is an allegation that "The defendant can service these cars with gas, oil, air, and water without noise and without the objectionable features herein shown; but he is not doing so. As to this particular service the petitioners do not object, but do object to the manner in which this is being carried on, and the attendant disturbing features that are unnecessary and unreasonable." Among the prayers was one "That the defendants be restrained from allowing employees or patrons making of all noises in the operation of the business that is permitted beyond reason and necessary, having due regard to the convenience of persons in adjacent dwellings who may be asleep or trying to sleep between said hours." While the petitioners are not entitled to all the relief prayed for, or to an injunction against the operation of the defendant's business when conducted in a normal manner, accompanied by no more noises than are reasonably necessary, yet they would be entitled to injunctive relief against unusual and unnecessary noises, provided the proof shows that the operation of the business is attended with such unusual and unnecessary noises, as distinguished from those disturbances and noises which are normal and of the character usually attendant upon the operation of the business of operating a filling-station and garage for repairs. It was not erroneous to refuse to dismiss the action on general demurrer.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Jenkins, J., who dissents.*

BELL, Justice, concurring specially. On proper construction of

the petition, it does not appear that the service station is situated in a section that is exclusively or primarily residential; and for this reason I concur in the judgment without committing myself at this time as to whether the same conclusion would be proper in other circumstances. As to that matter, the petition alleges as follows: "The defendant's place of business is located on Bellvue Avenue, Dublin, Ga., and in an area that is a residential district and is the only business keeping open all night in this section of the city. The block in which this business is located extends from Monroe Street on the east to Church Street on the west, Bellvue Avenue on the south to Gaines Street on the north. Fronting on Bellvue Avenue in this block are the defendant's place, two other filling-stations, a laundry depot, but not a laundry and no laundry work done there, two residences, and an apartment-house with ten apartments therein. On the Monroe Street side of this block is a boarding-house and a dwelling; on the Church Street side are two dwellings; and on the north side of the block, which is approximately 325 feet from Bellvue Avenue, are five dwellings. There is no business conducted in this block during late hours of the night. The other two filling-stations close in the early part of the night." On the same street and within the same block, there are, according to the allegations, only two residences, an apartment-house, a laundry depot, and two other filling-stations. Elsewhere in the petition it is stated that there is a large first-class hotel across the street, with eighteen front rooms. As to whether other businesses are conducted within the hotel building, as is not uncommon with the larger hotels, the petition is silent. It does allege that the business complained of is the only business keeping open all night in this section of the city. Whether the blocks adjoining the one above described, on the same avenue, are given over to residences or to business, is not shown; but it affirmatively appears from the petition that the location of the defendant's business is not in a residential district, although a general statement to the contrary is made. This weakness in the petition could not be cured by proof, whatever the evidence may have been. In the circumstances, as far as the judge could properly go would be to enjoin the making of unusual and unnecessary noises; but the injunctive order granted was not so limited.

JENKINS, Justice, dissenting. While I do not agree to the doc-

trine that what may not be a nuisance per se can not become a nuisance when established in a residence neighborhood (*McGowan* v. *May,* 186 *Ga.* 79, 196 S. E. 705; *Poole* v. *Arnold,* 187 *Ga.* 734, 742, supra), I nevertheless recognize that this court has committed itself to a ruling that a filling-station and garage, when carried on in a proper and orderly way in a residence neighborhood, does not by reason of its location become a nuisance. *Standard Oil Co.* v. *Kahn,* 165 *Ga.* 575 (supra); *Morrow* v. *Atlanta,* 162 *Ga.* 228 (supra); *Howell* v. *Board of Commissioners of Quitman,* 169 *Ga.* 74 (3) (supra); *City of Hawkinsville* v. *Williams,* 185 *Ga.* 396, 399 (195 S. E. 162). However, even though a properly conducted service station and garage, erected in a residence neighborhood, may not by reason of its location constitute a nuisance, it is my opinion that under the ruling in *Warren Co.* v. *Dickson,* 185 *Ga.* 481, 484 (supra), such an establishment may become a nuisance *per accidens,* if operated even in a usual and orderly way, at times and at hours which would naturally disturb the sleep and rest of normal people. Accordingly, I can not concur in the ruling that a service-station and garage, located in a residence community, can be operated in a normal manner at any and all hours of the night without becoming a nuisance. This I construe to be the effect of the majority holding.