SAVANNAH, FLORIDA & WESTERN RY. CO. *v.* PARISH.

1. Even though a pool of stagnant water in a city may be a public nuisance, a citizen suffering special damage by reason of sickness of himself or family, or depreciation of his property, as the result thereof, has a cause of action against the party creating or maintaining the nuisance.
2. The allegations in the petition were sufficient to warrant the admission of testimony as to the character of filth drained or thrown into the pool.
3. Evidence of depreciation in rental value was admissible for the purpose of showing damage to the property.
4. The fact that the pool could have been drained by the municipal authorities would not relieve the defendant from liability for any special damages arising from the nuisance.
.5. Whether the sickness was occasioned by the stagnant water, or by other causes creating similar diseases in distant portions of the city, was a matter for the jury; and the defendant having offered no evidence, and that introduced being sufficient to sustain the verdict, a new trial was properly denied.

Argued June 11,—Decided June 29, 1903. Rehearing denied August 11, 1903.

Action for damages. Before Judge Griffin. City court of Valdosta. January 2, 1903.

The suit was brought in May, 1902. The plaintiff alleged, in brief, that he had resided since 1895 on a lot in Valdosta, the rear of which was bounded by the right of way of the defendant; that his home had been well situated, healthy, and in every way desirable as a family residence, up to the summer of 1899, when the defendant cut and had continued to maintain, on its right of way immediately in the rear of the plaintiff's lot, a ditch or excavation five or six feet deep, twenty-five feet wide, and extending more than the length of the south boundary of his lot, which formed a receptacle for the drain water from the surrounding lands and the rainfall, whereby filth from various water-closets and privies, situated along the northern boundary of the right of way for two hundred yards or more, naturally ran into this excavation and there remained for weeks and months, becoming stagnant, polluted, and poisonous, and sending forth noxious and offensive odors and vapors, impregnating the atmosphere that plaintiff and his family were compelled to breathe; that thus the defendant had rendered his home very unhealthful and undesirable, and had decreased its market valuation at least $1,000; that there never was any good reason or necessity for making or maintaining the excavation, but the defendant had so kept it wilfully, wantonly, and negligently, with full knowledge of the surroundings and in disregard of the consequences to

the plaintiff; that ever since it was cut it had been a nuisance in that plaintiff and his family had constantly suffered from sickness directly produced by the poisonous gases and vapors that had continually arisen therefrom with varying intensity, often with such force as to make it almost impossible for him and his family to live there, and the physical and mental pain thus suffered had been practically unbearable and to his damage in the sum of $1,000; and that he had been damaged in a like sum in the amounts he had been compelled to expend for medicines, doctors' bills, etc. He further claimed that he was entitled, under the facts, to recover punitive damages, as well as damages for his loss of time and ability to labor.

The defendant, denying the material allegations of the petition, set up that it had a right to make the excavation for the purpose of changing the railroad grade; that it had been kept drained; and that the plaintiff had never complained to defendant of any filth or nuisance at the place until about April 1, 1902, when defendant at once opened some drainage that had been temporarily clogged, and even placed fresh dirt in the excavation in order to show the plaintiff its readiness and willingness not to injure him or his family or his property. After verdict for the plaintiff, a motion for a new trial was overruled, and the defendant excepted. The motion was on the general grounds, and because the court erred in allowing testimony to be introduced, over objections that there were no allegations authorizing it, that there were eight or ten water-closets, privies, horse and cow lots, on the north side of the excavation, that drained into it; that "the work-train would stand out there and throw the filth in there, and it would accumulate;" and that the rent of the plaintiff's house was worth $16 per month without the excavation, and nothing with it. Also, that the court failed to charge the jury that if the real or proximate cause of the nuisance was the result of the acts or omissions of the City of Valdosta, the defendant would not be liable; and erred in charging, upon the measure of damages, if any were found, that the jury might take into consideration "the decrease in the rental value of the property," the plaintiff having occupied the house and lot and not having offered it for rent.

*D. H. Pope* and *Cranford & Walker*, for plaintiff in error.

*G. A. Whitaker* and *W. E. Thomas*, contra.

LAMAR, J.   The testimony tended to show that water, which collected in a trench dug by the railroad company on its right of way near the plaintiff's house, became stagnant; that the odors arising therefrom impaired the desirability of his house as a residence, besides causing sickness to himself and family.   The defendant introduced no testimony, but on cross-examination brought out the fact that many others in the .immediate neighborhood were likewise affected.   It argued that the evidence made out a case of public nuisance, and procured from the court the following charge: " If you find this to be a public nuisance and not a private nuisance, . . the plaintiff would not be entitled to recover." A verdict for $2,000 having been rendered in favor of the plaintiff, the company insists that it is contrary to law and to this charge.

Sections 3858 and 3859 of the Civil Code are codifications of general principles, and provide that " A public nuisance is one which damages all persons which come within the sphere of its operations, though it may vary in its effects on individuals. . . If, however, a public nuisance causes special damage to an individual, in which the public do not participate, such special damage gives a right of action."   If one should obstruct a highway, it would be a public nuisance to be abated as such; but if an individual in going along the road at night should drive over the obstruction and suffer injury as a result, he would be entitled to compensation for the damage done.   If another should be specially damaged, he would likewise be entitled to recover.   If a dozen individuals in turn were injured, they would each be authorized to sue the wrongdoer for the particular injury inflicted upon them; and for the reason that the defendant had not only created a public nuisance, but that he had likewise specially damaged particular individuals. It may have been that the nuisance here complained of could have been abated by the public; but if before such action was taken it could be clearly shown that plaintiff and his family had suffered, he would not lose his right to sue, though others in the neighborhood had likewise suffered.   The private special injury was not merged and lost in the general public injury, of which only the public could complain.   If the nuisance results in the impairment of a common right which every one may exercise, such as the use of a street, then the deprivation of that use hinders all persons alike from the enjoyment of the common right; and when it does not

cause any special or peculiar damage, it furnishes no cause of action in favor of a particular individual, although he may be greatly inconvenienced. The public at large suffer, and he suffers as a member of the public. The wrong must be righted by the public, instead of by many separate suits at the instance of each member of the body politic who has been inconvenienced. But the public can not be said to enjoy health or suffer sickness. In the very nature of things that can only be predicated of the individual. Whatever affects his health affects him specially, and him alone. Such damage is special damage within the meaning of the code, and the fact that other citizens suffer similar special damages does not convert his injury into the nature of public damages. So, too, anything which damages a particular plaintiff's property, or renders it unfit for use, is not lost in the general and public nuisance. There are many things which affect a whole community, depress property in an entire city, divert trade, and give rise to a cause of action in favor of no particular citizen. It is damage without the right to recover — damnum absque injuria. But where the cause and the effect are close and immediate; when the inhabitants of a particular house are rendered sick; when the rental value of the residence is immediately and proximately due to a special and particular cause close at hand; and when that cause is produced by a violation of law or the maintenance of something contrary to law or which in its nature works hurt to those near by, a cause of action arises in favor of the injured party against the maintainer of the nuisance; nor does he lose this right because others in the vicinity have similar causes of action. To hold otherwise would be to render the defendant liable for one injury, and hold him harmless where many were damaged. *South Carolina R. Co.* v. *Moore*, 28 *Ga.* 418; *East Tenn. R. Co.* v. *Boardman*, 96 *Ga.* 356; *De Vaughn* v. *Minor*, 77 *Ga.* 809; 21 Am. & Eng. Enc. L. (2d ed.) 716.

There are several cases of high authority recognizing the right of a plaintiff to recover under circumstances substantially like those set out in the petition. Vice-Chancellor Bruce in Sampson v. Smith, 8 Sim. 272, held that, " supposing the nuisance is public, it is private also, and the plaintiff does not apply for relief in respect of the public nuisance, where he sues for his special damages." In Francis v. Schoelkopk, 53 N. Y. 152, the action was for damages occasioned by stenches arising from the defendant's tanneries maintained in the

city of Buffalo.     The court said:   " The evidence discloses that
other houses in the vicinity were similarly affected with the plain-
tiff's.   The ground for the motion for nonsuit was, that as the stench
injured a large number of houses the nuisance was common, and
no one could maintain an action for his particular injuries. . . The
rule is that one erecting a common nuisance is not liable to an ac-
tion at the suit of one who has sustained no damage therefrom ex-
cept such as is common to the entire community, yet he is liable
to one who has sustained damage peculiar to himself.    No matter
how numerous the persons may be who have sustained this peculiar
damage, each is entitled to compensation for his injury."    So in
Wylie *v.* Elwood, 134 Ill. 281, 23 Am. St. Rep. 673, where a rail-
road erected a coal-shed in the heart of a city, and so operated it
as to create a nuisance by reason of the noise, dust, and dirt, de-
stroying the comfort, and injuring the health of the occupants of
adjoining property, it was held, citing the Francis case, supra, that
a nuisance may at the same time be both public and private, and
that a plaintiff is entitled to recover, even though the home of
his neighbor is unendurable from the same cause, and that it is no
defense for a wrong-doer to show that by the same act he has in-
flicted like injuries upon numerous other persons.    And in Wesson
*v.* Washburn Iron Co., 12 Allen, 95, 90 Am. Dec. 181, it was de-
clared that the rule that where the right impaired is public, an in-
dividual action does not lie, has no application to cases where the
health of individuals is injured by the creation of noisome smells,
no matter how extensive or numerous may be the instances of dis-
comfort or injury to persons or property thereby occasioned.

The allegations in the petition were sufficient to admit the evi-
dence complained of, as to the character of filth drained or thrown
into the trench.    The evidence as to the depreciation in rental value
was admissible as tending to show a damage to the property, and
the charge on the same subject was not error for any reason assigned.
The fact that the pool could have been drained, and the accumula-
tion of water prevented, had the City of Valdosta opened a ditch
across the street, did not relieve the company of the liability for
any injury done by it to the plaintiff.    The defendant insists that
the verdict was contrary to law and the evidence, inasmuch as it
appeared that much sickness of the same kind existed in other and
remote parts of the city, too distant to be affected by the stagnant

pool. This may be true, and a fact to be most carefully considered by the jury, for sickness of the character shown might have been occasioned by the same causes producing it elsewhere in the city; but the defendant introduced no testimony, and that offered by the plaintiff was uncontradicted, and sufficient to sustain the verdict.

*Judgment affirmed. All the Justices concur.*