## THRASHER *v.* CITY OF ATLANTA *et al.*

No. 9607.   FEBRUARY 20, 1934.

*Charles W. Anderson* and *Joseph W. Weaver,* for plaintiff.

*E. Smythe Gambrell, J. L. Mayson, C. S. Winn, J. C. Savage, Haas, Gambrell & Gardner, Chadbourne, Stanchfield & Levy, Edgar Chambers Jr.,* and *R. S. Pruitt,* for defendants.

BELL, J.   On October 17, 1931, Clovis Thrasher filed a suit for injunction and damages against the City of Atlanta and a number of companies engaged in the business of aviation.   Several individuals were also made parties defendant.   The plaintiff alleged that he owned and occupied a residence in the vicinity of Candler Field, an airport established and controlled by the City of Atlanta, and that the city and the other defendants were so conducting the airport that it constituted a nuisance, with resulting damage to the plaintiff.   The petition was several times amended, and was finally redrafted by an amendment allowed subject to demurrer on January 31, 1933.   Two other amendments were allowed on like condition on February 10, 1933.   These three amendments constituted the plaintiff's case as finally presented to the trial court.   The petition as thus amended was dismissed on general demurrers severally filed by the City of Atlanta and other defendants, and the plaintiff excepted.

The plaintiff alleged general damage in the sum of $50,000.   The only item of special damage was the claim of $2500 alleged to have been expended for medical care and attention to his wife by physicians, and for medicines.   The plaintiff also alleged demand upon the City of Atlanta in accordance with the Civil Code (1910), § 910.   Among the prayers were the following: "That the said

nuisance be abated and enjoined temporarily or that defendants be required to give bail to protect the plaintiff and his family as to their lawful and constitutional rights at the hands of defendants in the premises herein related;" and "That in the absence of adequate compensation, defendants do be permanently enjoined, and that he do have and recover his lawful damages and costs of this action." The specific matters about which the plaintiff made complaint were (1) danger; (2) noise; (3) dust; and (4) flights by airplanes above the plaintiff's land. The petition was drawn at great length, and in view of the abundance of irrelevant and immaterial matter and needless repetition, the allegations will not be stated here in full, but reference will be made only to such parts as are necessary to an adjudication of the specific questions involved.

It was alleged that the plaintiff bought and established his home in 1924, and that the airport was established in 1927; that the airport is real property bought by the City of Atlanta "for the common purpose, scheme, device and plan as it is now used and occupied by all of the said defendants as such airport;" that the City of Atlanta operates, maintains, supervises and controls "all operations at the said airport;" and that the activities of all of the defendants as stated in the petition "are in pursuance of common plan and purpose of the said airport;" the "said defendants being joint and several tort-feasors in the following premises, acting according to and in pursuance of a concerted plan, scheme and device in concert, jointly and severally to establish, maintain and operate an airport for private and proprietary purposes, to wit: Candler Airport in the said county and State for private convenience and private gain of the said municipality and the other named defendants herein." By these allegations it is sought to hold the defendants jointly and severally liable for the acts of each, and, in view of the act of 1927 hereinafter referred to, they were as against a general demurrer sufficient for that purpose, provided liability is shown. *Langley* v. *Augusta*, 118 *Ga.* 590, 597 (45 S. E. 486, 98 Am. St. R. 133); *Scearce* v. *Gainesville*, 33 *Ga. App.* 411 (3) (126 S. E. 883); *City of Macon* v. *Roy*, 34 *Ga. App.* 603 (130 S. E. 700); *Trawick* v. *Chambliss*, 42 *Ga. App.* 333 (2) (156 S. E. 268). While the quoted allegations were not contained in a single paragraph, but are gleaned from the petition as a whole, they may be considered as alleging joint and concerted action as indicated.

■ By the act of August 23, 1927 (Ga. L. 1927, pp. 779, 780), the General Assembly authorized and empowered the City of Atlanta "to purchase, own, and operate municipal landing fields for the reception, storage, and operation of airplanes; also for the use of the Government in the Air Mail Service, and such fields may be located either within or without the limits of said city and when so purchased and defined, the City of Atlanta is given police jurisdiction over the land so acquired, except as to any part thereof which may be located in some other municipality." The same statute further provided that any land or locations leased, purchased, or operated by the City of Atlanta as a municipal landing field shall be under the exclusive jurisdiction and control of that municipality, declaring however that the city would not be authorized to establish any such landing field at a greater distance than 25 miles from the center of the city as then defined. In 1933, the legislature enacted other laws in regard to aircraft and aviation; but since the petition in the instant case was filed in 1931 and all amendments thereto were presented before the passage of the acts of 1933, we will consider the case without reference to the later statutes. See Ga. Laws, 1933, pp. 99, 102.

By the act of 1927 aviation was recognized by the General Assembly of this State as a lawful business, and it would have been so recognized by this court in the absence of this statute. This court will take judicial notice of the fact that airplanes have been used for several years in this State and throughout the country in the transportation of passengers and mail, that large sums of money have been devoted to the development of aircraft as a commercial industry, and that it has become an important, if not, indeed, a well-nigh indispensable, public utility. Wentz v. Philadelphia, 300 Penn. 261 (151 Atl. 883); Hesse v. Rath, 249 N. Y. 345 (164 N. E. 342). The act of 1927 not only recognized that the business of navigation in the air is a lawful enterprise, but impliedly ascribed to it a public interest, in authorizing the City of Atlanta, a municipal corporation, to establish landing fields "for the reception, storage, and operation of airplanes." It is apparent from the plaintiff's allegations that the City of Atlanta in establishing Candler Field as a port for airplanes was acting under express authority from the lawmaking power, and such being the case, all persons using the airport in the manner contemplated by law are within the protection

and immunity of the franchise so granted to the municipality. The airport is not a nuisance per se, although it might become such from the manner of its construction or operation. *City of Quitman* v. *Underwood,* 148 *Ga.* 152 (96 S. E. 178). In the absence of anything to the contrary, it should be presumed that such airport is constructed and operated in the manner contemplated by law, and whether or not in that case the plaintiff might have recovered for any permanent injury to his real estate under the constitutional provision against the taking or damaging of private property for public purposes without adequate compensation being first paid, he is not seeking a recovery upon that theory, his sole contention being that the airport is maintained and operated in such a manner that it constitutes a nuisance; and upon this basis and this alone is the present case to be decided. Cf. *City Council of Augusta* v. *Lamar,* 37 *Ga. App.* 418 (146 S. E. 763); *City of Atlanta* v. *Due,* 42 *Ga. App.* 797 (157 S. E. 256), and cit. In the brief of counsel for the plaintiff the act of 1927 is attacked as being unconstitutional for several reasons, but no attack upon the validity of the act was made in the plaintiff's petition, and therefore no constitutional question is presented for decision.

■ A nuisance is anything that worketh hurt, inconvenience, or damage to another; and the fact that the act done may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful, or such as would affect only one of fastidious taste, but it must be such as would affect an ordinary reasonable man. Civil Code (1910), § 4457. Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals. Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the State. A private nuisance gives a right of action to the person injured. § 4454. If, however, a public nuisance causes special damage to an individual, in which the public do not participate, such special damage gives a right of action. § 4455. A private nuisance may injure either the person or property, or both, and in either case a right of action accrues. § 4456. Even though a given condition may constitute a public nuisance, "a citizen suffering special dam-

age by reason of sickness of himself or family, or depreciation of his property, as the result thereof, has a cause of action against the party creating or maintaining the nuisance." *Savannah, Florida & Western Ry. Co.* v. *Parish,* 117 *Ga.* 893 (45 S. E. 280).

In paragraph 25 of the petition the allegations are as follows: "That the said navigation is dangerous and that no adequate provision is made or guarantee given to the people in the vicinity and the plaintiff and his family, particularly, to safeguard them from the danger of possible wrecking and falling of the said airplanes, and the same is a present and constant danger, as said aircraft goes on continuously, without stopping on Sundays or holidays, and is a nuisance and affords a constant menace and danger to their property, lives, and persons by the wrecking and destruction by negligent operations, as unavoidable wreckage at, nearby and over their premises, in that the defendant City of Atlanta and other defendants have made no provision for protection of the property, life, and persons in the happening of such events, and especially from explosions and fires from wrecked planes, and that said aircraft navigation is far more dangerous and capable of causing far more havoc than ordinary modes of transportation." The petition contains no averment more definite on the subject of danger. In *Richmond Cotton-Oil Co.* v. *Castellaw,* 134 *Ga.* 472 (4) (67 S. E. 1126), it was held: "Mere apprehension of irreparable injury from an alleged nuisance consisting of a house in course of construction for a lawful business use is not sufficient to authorize an injunction. If it be a nuisance, the consequences must be to a reasonable degree certain." See also Civil Code (1910), § 4459; *Standard Oil Co.* v. *Kahn,* 165 *Ga.* 575, 581 (141 S. E. 643). The petition shows nothing more than a mere apprehension of injury from the wrecking or falling of planes, and thus did not state ground for injunctive or other relief.

■ The strongest allegations upon the subject of noise were contained in paragraphs 12 and 24, and were as follows: "That there is operating at the said Candler Field by defendants named in this bill, by permission of the City of Atlanta, by its license, a testing block or apparatus where motors used in the airplanes are placed on the said testing block or apparatus, for the purpose of determining whether or not said motors are in condition to make a subsequent flight or to be further used, and after they are placed on the

said apparatus for that purpose said motors are put in motion and are maintained in the said motion at a rapid rate similar and equal to that rate to which they maintain in flight, same being very rapid, the said motors are practically the same as being level on the earth, that is, being same as stationary engines operated on the earth's surface, and that the said motors are large and being so operated create and maintain a great volume of noise and that the same is so loud, harsh, intense, that the atmosphere of the immediate community is densely filled with said noises, are heavily laden with said noise, and is distributed into the said community, and was not prevalent there prior to the establishment of the said airport, and disturbs plaintiff and his family and the community and same is a nuisance. That operating said testing block and motors on the said testing block is at night frequently about six o'clock and as late as midnight, when people in the community are trying to sleep and rest, and it disturbs said people in the community and plaintiff and his family, frequently after they have gone to sleep the motors start up and are disturbing their sleep, same is detrimental to their health. . That the landing and taking off and other acts at the said airport and in particular the landing and departing of the said airships in the immediate vicinity is a nuisance to the community in particular and plaintiff and his family, especially, in that a great noise is constantly maintained by the mechanical devices which operate and cause said aircraft to navigate in the immediate vicinity at the airport in arriving and departing, passing over and immediately adjacent to premises of plaintiff, and does not cease day or night, Sundays or holidays, and is so frequent and grows increasingly frequent from time to time as work of the defendants has increased in volume, and as in the past has been so frequent that the said noise disturbed the peace of the said plaintiff and his family, their happiness and right to peacefully and quietly enjoy their home and habitation, in that the same is harassing, disturbing, constantly loud, unpleasant, grating upon the sense of hearing, and disturbs their sleep, rest, quietude and sense of security and peace, and the same is a nuisance to plaintiff and his family and hurts and injures them."

The defendants contend that the petition does not anywhere allege that the noises were excessive or unnecessary in view of the business conducted, and that since the business is one affected with

a public interest and expressly sanctioned by law, the case should be controlled by the principles ruled in *Georgia Railroad &c. Co.* v. *Maddox,* 116 *Ga.* 64 (4) (42 S. E. 315), in which it was held: "Where a railroad terminal yard is located and its construction authorized under statutory powers, if it be constructed and operated in a proper manner, it can not be adjudged a nuisance. Accordingly, injuries and inconveniences to persons residing near such a yard, from noises of locomotives, rumbling of cars, vibrations produced thereby, and smoke, cinders, soot, and the like, which result from the ordinary and necessary, and therefore proper, use and operation of such a yard, are not nuisances, but are the necessary concomitants of the franchise granted." Other cases to the same effect were cited, including *Austin* v. *Augusta Terminal Ry. Co.,* 108 *Ga.* 671 (34 S. E. 852, 47 L. R. A. 755), and *Sheppard* v. *Georgia Railway & Power Co.,* 31 *Ga. App.* 653 (121 S. E. 868).

As will be seen later in this opinion, the plaintiff made some suggestion as to the feasibility of remedying all of the objectionable conditions complained of, including noise; but for the purposes of this case we may assume that the allegations were insufficient to show that the noises were improper or unnecessary. The cases last referred to and like cases are based upon the conferred right of eminent domain, a right which can operate only upon the property and never on the person of the citizen. Civil Code (1910), §§ 6388, 6464; *City of Atlanta* v. *Due,* supra. It has been said many times that if the law expressly authorizes a thing to be done and if it is done as the law requires, it can not be a nuisance, but such statement necessarily assumes that the law is valid, and, as was said in *Towaliga Falls Power Co.* v. *Sims,* 6 *Ga. App.* 749 (6), 755 (65 S. E. 844), "it is extremely doubtful if the legislature has the power to authorize the doing of a thing which in its nature would tend to destroy or to impair materially the morals, the health, or the safety of the people. . . The right of private convenience, the right of the private citizen to hold and own any particular property, must yield to public convenience and public service, whenever and whereever the legislature says yield; and to this extent the right of eminent domain is paramount; but private life and private health are more precious in the eyes of the law than even public convenience." See also *Hill* v. *McBurney Oil &c. Co.,* 112 *Ga.* 788 (3) (38 S. E. 42, 52 L. R. A. 398) ; Baltimore & Potomac R. Co. *v.* Fifth Baptist

Church, 108 U. S. 317, 331 (2 Sup. Ct. 719, 27 L. ed. 739) ; 20 R. C. L. 388, 445, §§ 11, 60. Obviously the validity of such legislation would not rest upon a surer foundation if predicated on the police power instead of the power of eminent domain, where a substantial injury to person, and not to property, is involved.

In the *Maddox* case, supra, it did not appear that the noises were such as to affect the health of the complainants, and the same is true of the other cases relied on by counsel for defendants in error. But while the plaintiff here has alleged that the noises are such as to disturb the rest and sleep of the plaintiff and his family and "same is detrimental to their health," he further alleged as will be seen below that from this and other causes the health of his wife was so impaired as to require the services of a physician, and averred in effect that at least one of the other causes which contributed to the condition of his wife was improper and unnecessary and not essential to the proper conduct and operation of the airport. In these circumstances, we do not deem it necessary to decide whether he would be entitled to damages or injunction solely on account of the noises, in the absence of allegation and proof that they were improper and unnecessary in the orderly conduct of the business in question. The petition is being considered solely on the question of its sufficiency to withstand a general demurrer, and in such case a decision is not required as to whether it is good in every part. "The test of the sufficiency of a petition, as against a general demurrer, is whether the defendant can admit all that is alleged and escape liability." *Citizens Bank* v. *Union Warehouse Co.*, 157 *Ga.* 434 (9), 454 (122 S. E. 327).

The allegations in regard to dust were in part as follows : "That a vast number of airplanes and vehicles arrive at and depart from the said airport, including traffic, both on the ground and in the air, and other traffic along the streets leading to and from the said airport and that the major portion of the said airport consists of what is known as a landing field, which is a large graded field of raw earth, being an unnatural surface built up by earth graded from high elevation and transported to other portions of the field, to wit: said landing field for the purpose of making a large and plane surface for the convenience of airships arriving at and departing from the said airport. Said airplanes and airships take a lot of space on the said field arriving and departing, and in so doing

kick up a lot of raw earth, same being unnatural formation of the earth, and their propellors blow and kick up a great quantity of the said earth, when disturbed under weather suitable for air transportation, is easily removed from the surface of the earth, and these activities of arriving and departing being frequent both day and night, without stopping for holidays or Sundays, causes great clouds of dust to penetrate the air; and motion of said aircraft, setting same in motion making great clouds of dust arise in the air and moving away from the earth by the action of the said aircraft and makes abnormal and intermittent air currents such as to carry said dust across Candler Field and on to the property in the community of people adjacent and surrounding said airport and landing field, and particularly on to the property of plaintiff. That the said dust so created, disturbed and distributed on to the property of the plaintiff arises and is created on the property of defendant, City of Atlanta, to wit: Candler Field, and is created in pursuance of the plan, design, and is proximate result of said plans of defendants, and their acts herein related, and the same contaminates the air and makes the same unwholesome, unpleasant, filthy and unhealthy for the occupants around said field, is annoying, unpleasant, injurious and hurts them in taste, smell, hearing, seeing, and feelings, and renders the atmosphere in, at and around the home of plaintiff unsuitable for his pleasure, and purposes and necessity, and is very inconvenient to his family and the same constitutes a nuisance to his immediate family and his community, and to plaintiff. That the said dust in vast quantities enters the plaintiff's home and premises, and alights on the vegetation and flowers and damages them, and enters and alights in and on the walls of the house and makes them unsightly and makes it impossible to keep them clean; the walls are also affected, and alights on the furniture and personal effects in the home and causes great inconvenience and annoyance to such extent that the same constitutes a nuisance to his hurt, injury and damage and also to his family and to the people of the immediate community, and is a nuisance. That the said dust in the said quantities is injurious to the health of plaintiff and his family and the people of the community in general and is thereby a nuisance to his injury, damage and hurt. The defendant City of Atlanta has sufficient property in area to justify the removal of the locale or sphere of these activities further away from petitioner's property and those

now mostly affected by the proximity of this activity in their community, and that the field hereafter maintained can be by vegetation, chemical or other means changed so dust can be prevented and would to some extent lessen dust and other matters complained of and afford some relief, he avers that even a removal to a further distance will not be complete and adequate relief now and in the future on account of the increasing activities. That some matter of prevention at the airport can be by defendants applied to the other nuisances complained of as noise, low flying, etc., and other measures might be taken, and that it is competent that the court should take cognizance of this matter and take jurisdiction of the same and determine what measure should be taken and relief granted, now and in the future, and grant his damages to the date of trial of this action."

The plaintiff further averred that his wife had suffered an impairment in her health as a result of the acts "aforesaid," which included those in relation to dust and the contamination of the atmosphere thereby. The averments as to the wife's health and of the damage to the plaintiff in connection therewith were as follows: "That the wife of plaintiff has suffered from said acts, aforesaid, by reason of the impairment of her health, which was caused by the acts of the defendants aforesaid, and said injury is permanent, contributing to and wrecking her health, happiness, peace and life; causing him great humiliation, embarrassment, worry, fear, mental and physical torture and agony, and is a constant menace to the health of plaintiff and his family, and expense and damage to his purse by way of expense for medical attention and treatment, including medicine and so forth, that plaintiff has had to expend for medical care and attention to his wife by physicians and medicines by reason and as the approximate [proximate result?] of the acts of defendants aforesaid the sum of $2500 on account of such expenses, and said injury and expense is permanent and continuous, and causing plaintiff unlimited expense, hurt and injury to himself, his family, his purse, and will continue so to do unless said nuisance is abated. Plaintiff lays special damage for his family, and especially for his wife, in the sum of $2500 for medical care and expenses of treatment, including professional services."

Dust is a thing that may in some measure be controlled, and the petition alleged that the objectionable conditions with respect to

dust could be ameliorated "by vegetation, chemical or other means." The allegations here were more definite than those touching the possibility of reducing the noise, and, whatever the allegations may show or fail to show regarding noise, the petition is construed as alleging that dust in the amount described is not a "necessary concomitant" of the franchise granted, but is the result of improper or negligent operation. It further appears that the dust has contributed with other causes to the impairment of the health of the plaintiff's wife, and that he has necessarily incurred physicians' bills and expenses for medicines in a large sum. In *Central Georgia Power Co.* v. *Nolen,* 143 *Ga.* 776 (85 S. E. 945), an individual sued a public service corporation for injury to his health, not to property. This court said: "It will not be presumed that the legislature intended to authorize a corporation or an individual negligently to create a nuisance tending to destroy the lives or injure the health of others without remedy for damages resulting therefrom, unless it should clearly so appear. The right of a company to build a dam does not include a right to build or maintain it in such negligent or improper manner as to cause a nuisance injurious to the health of the adjacent community. For damages arising from such things an action will lie. In determining whether the authority has been properly exercised, the location and surroundings may be considered. In this State damages recoverable on account of a nuisance are not limited to injury to realty; but injury to health may furnish a basis for such recovery."

In *Towaliga Falls Power Co.* v. *Sims,* supra, it was said: "The properly doing of that which the law authorizes is not a nuisance. . . The justification and exemption from ordinary liability afforded to public-service corporations by the law or their respective charters extend only so far as the authorization of the law extends. If they act beyond the powers conferred by law or by their charter, they can not relieve themselves from the ordinary rules of damage by showing the public nature of the business carried on by them. . . It is never to be presumed that the legislature intended to authorize a corporation to erect a nuisance materially tending to destroy the life or health of others." See also, in this connection, *Holmes* v. *Atlanta,* 113 *Ga.* 961 (39 S. E. 458) ; *Bell* v. *Savannah,* 139 *Ga.* 298 (77 S. E. 165) ; *Smith* v. *Atlanta,* 75 *Ga.* 110; *City of Atlanta* v. *Warnock,* 91 *Ga.* 210 (18 S. E. 135, 23 L. R. A. 301,

44 Am. St. R. 17) ; *Bainbridge Power Co.* v. *Ivey,* 38 *Ga. App.* 586 (144 S. E. 825) ; and other cases cited in 6 *Ga. App.* 758.

The creation and spreading of dust in such large and unusual quantities as unreasonably to contaminate the atmosphere and endanger the health and lives of the citizens is not within the actual or implied authority of the franchise, and those responsible therefor, despite any immunity or limited liability, may be held to full accountability for the maintenance of a nuisance. Dust is a physical substance, or an aggregation of substances, gathered from the earth. It may contain impurities and result directly in disease or physical injury; one can not be forced to endure it from the negligence of another, even though the business from which it springs may be expressly authorized by law. So also the spread of dust upon the property of another in excessive and unreasonable quantities may amount to a physical invasion of his property rights. In *Holman* v. *Athens Empire Laundry Co.,* 149 *Ga.* 345 (100 S. E. 207, 6 A. L. R. 1564), it was said, in effect, that every person theoretically has the natural right to have the air diffused over his premises in its natural state, free from artificial impurities, and that while the pollution of the air may to some extent be necessary to the reasonable enjoyment of life and indispensable to the progress of society, the right so to use it must not be exercised in an unreasonable manner so as to inflict injury upon another unnecessarily.

As to the matter of dust, the allegations were sufficient to show substantial injury to the plaintiff's property, as well as a substantial interference with its use and enjoyment, within the purview of the decision in *Holman* v. *Athens Empire Laundry Co.,* supra. The dust so deposited would be no less a nuisance in quality, if less in degree, than the causing of surface water to be discharged upon another's premises. In *Bass Canning Co.* v. *MacDougald Construction Co.,* 174 *Ga.* 222 (162 S. E. 687), it was held: "A general grant of power to grade streets and to establish in connection therewith a system of drainage does not carry with it any right on the part of the municipality to create and maintain a nuisance by causing surface-water to be discharged upon the premises of a private citizen; and he may, when such a thing has been done, maintain against the city an action to recover the damages sustained in consequence thereof." See also *Central Georgia Power Co.* v. *Pope,* 141 *Ga.* 186 (6) (80 S. E. 642, L. R. A. 1916D, 358) ; *Savannah,*

*Florida & Western Ry. Co.* v. *Parish,* supra; *Tate* v. *Mull,* 147 *Ga.* 195 (93 S. E. 212, 3 A. L. R. 310); *Pitner* v. *Shugart,* 150 *Ga.* 340 (103 S. E. 791, 11 A. L. R. 1399); *Jones* v. *Royster Guano Co.,* 6 *Ga. App.* 506 (2) (65 S. E. 361).

The petition does not allege that the real estate was damaged in any sum, but this would not prevent the grant of an injunction if it appears that a nuisance has been created with reference thereto. *Tate* v. *Mull,* supra. The allegations of the petition may or may not be true as a matter of fact, but they are to be taken as true on demurrer. Since it reasonably appears from the allegations that the quantity of dust complained of is not essential to the proper operation of the airport for the purposes intended, we do not undertake to declare the extent to which dust might be permitted, in view of the public nature of the establishment, before the dust should be treated as an actionable or abatable nuisance; nor is a decision required as to whether it was at all necessary for the plaintiff to allege negligence or improper conduct where he is complaining of substantial injury to his wife's health, the plaintiff having *in fact* alleged the equivalent of such negligence or improper conduct on the part of the defendants.

The petition stated a cause of action for damages for expenses incurred in connection with the wife's illness (*Central Georgia Power Co.* v. *Stubbs,* 141 *Ga.* 172 (2b,3) (80 S. E. 636), and also for injunction against the continued spreading of dust in excessive and unreasonable quantities over the plaintiff's premises. This does not necessarily mean that the entire airport should be abated, or that its general operation should be enjoined. In case the plaintiff should prevail upon the trial, the remedy of injunction would apply only to the objectionable features. *Georgia Railroad &c. Co.* v. *Maddox,* supra; *Pig'n Whistle Sandwich Shops* v. *Keith,* 167 *Ga.* 735 (3) (146 S. E. 455). If a plaintiff could be estopped by laches in a case of this particular character, it does not affirmatively appear from the allegations in the instant case that the plaintiff should be barred upon this ground.

■ The allegations with reference to flights over the land and the complaints against low flying are now to be considered. In paragraph 13 the petition averred: "That there have been frequent occasions of low flying by pilots, who have permission to arrive and depart at the said field and whose names are unknown to petitioner,

but are acting by permit and under license of the defendant, City of Atlanta, and other defendants named in the bill, who arrive and depart, who have been guilty of low flying, that such low flights over adjacent property is a trespass and is a violation of the constitutional rights of plaintiff and other property owners, and that such low flying has been so frequent as to be a nuisance and is dangerous to plaintiff and his family and others in the community." The petition also alleged the following: "That defendants and all of them have at various and sundry times, too numerous to detail, flown over his property at low altitudes, to wit, lower than 500 feet, and that such flights occur frequently, and same is a nuisance. . . That on the date of the court order denying an interlocutory order herein, the defendants flew over his property at such a low altitude all day and unnecessarily for the sole purpose of aggravating him, and same was hurtful and a nuisance."

We will consider these averments as an effort to show (1) a trespass, and (2) a nuisance. The Civil Code (1910), § 3617, declares that "the right of an owner of lands extends downward and upward indefinitely." In section 4477 it is stated that "the owner of realty having title downwards and upwards indefinitely, an unlawful interference with his rights, below and above the surface, alike gives him a right of action." These statements as to ownership above the surface are based upon the common-law maxim, cujus est solum ejus est usque ad cœlum,—who owns the soil owns also to the sky. These provisions of the code should therefore be construed in the light of the authoritative content of the maxim itself. As a matter of fact, the language of the code that the title to land extends upwards indefinitely would seem to be a limitation upon the ad cœlum doctrine, indicating by implication that the title will include only such portions of the upper space as may be seized and appropriated by the owner of the soil. Such a construction of the code provisions would materially minimize the difficulties in the present case; but even if the code was intended to express the ad cœlum theory in its entirety, and this we assume in the present case, it remains true that the maxim can have only such legal signification as it brings from the common law.

What is the sky? Who can tell where it begins or define its meaning in terms of the law? When can it be said that a plane is above the sky or below it? How can there be an unqualified tangible

right in a thing so indeterminate and elusive? What and where is the res of which a court may assume jurisdiction in a case involving a private claim of title? Possession is the basis of all ownership (Missouri v. Holland, 252 U. S. 416, 434, 40 Sup. Ct. 382), and that which man can never possess would seem to be incapable of being owned. 50 C. J. 731, 782, and cit. In order to recover for a trespass it is necessary to show title or actual possession. *Heffner* v. *Fulton Bag & Cotton Mills,* 39 *Ga. App.* 728 (148 S. E. 355). The space in the far distance above the earth is in the actual possession of no one, and, being incapable of such possession, title to the land beneath does not necessarily include title to such space. The legal title can hardly extend above an altitude representing the reasonable possibility of man's occupation and dominion, although as respects the realm beyond this the owner of the land may complain of any use tending to diminish the free enjoyment of the soil beneath. The maxim to which reference has been made is a generalization from old cases involving the title to space within the range of actual occupation, and any statement as to title beyond was manifestly a mere dictum. For instance, a court in dealing with the title to space at a given distance above the earth could make no authoritative decision as to the title at higher altitudes, the latter question not being involved. The common-law cases from which the ad cœlum doctrine emanated were limited to facts and conditions close to earth and did not require an adjudication on the title to the mansions in the sky. Accordingly, the maxim imported from the ancient past consists in large measure of obiter dicta, and to that extent can not be taken as an authentic statement of any law. It follows that the literal terms of the code sections referred to must be discounted or qualified in like measure. The same is also true of any decisions by the courts of this State in which the language of these sections has been quoted or restated, this being the first occasion when the questions here under consideration have been presented to either of the appellate courts of Georgia for decision.

But the space is up there, and the owner of the land has the first claim upon it. If another should capture and possess it, as by erecting a high building with a fixed overhanging structure, this alone will show that the space affected is capable of being possessed, and consequently the owner of the soil beneath the overhanging structure may be entitled to ejectment or to an action for trespass.

However, the pilot of an airplane does not seize and hold the space or stratum of air through which he navigates, and can not do so. He is merely a transient, and the use to which he applies the ethereal realm does not partake of the nature of occupation in the sense of dominion and ownership. So long as the space through which he moves is beyond the reasonable possibility of possession by the occupant below, he is in free territory,—not as every or any man's land, but rather as a sort of "no man's land." As stated above, however, the occupant of the soil is entitled to be free from danger or annoyance by any use of the superincumbent space, and for any infringement of this right he may apply to the law for appropriate redress or relief.

In *Davison* v. *Reynolds,* 150 *Ga.* 182 (103 S. E. 248), Mr. Justice Gilbert called attention to the statement by Blackstone, and to its approval by Sir Edward Coke, that "Land hath  .  . in its legal signification, an indefinite extent upwards as well as downwards;" but he also stated that "Lord Ellenborough gave only a qualified assent in so far as it is applied to the superincumbent air space." The reference was, of course, to the case of Pickering *v.* Rudd, 1 Starkie, 56, an action for trespass on account of an overhanging board, where it was stated by Lord Ellenborough that while it had been "held that firing a gun loaded with shot into a field was a breaking of the close," he had "never yet heard that firing in vacuo could be considered as a trespass," and then doubtingly propounded the question, "Would trespass lie for passing through the air in a balloon over the land of another?"

Perhaps the owner of the land may be considered as being in actual possession of the space immediately covering the trees, buildings and structures affixed to the soil, so that the act of navigating a plane through this stratum could be condemned as a trespass; but that is not a question for decision in the present case, and obviously we should not here attempt to define the altitude at which aerial navigation might be considered as constituting such an offense. It is sufficient to say that the flight of aircraft across the land of another can not be said to be a trespass without taking into consideration the question of altitude. It might or might not amount to a trespass, according to the circumstances including the degree of altitude; and even when the act does not constitute a trespass, it could be a nuisance, as where it "worketh hurt, inconve-

nience, or damage" to the preferred claimant, namely, the owner of the soil, or to a rightful occupant thereof.

The above views are not in accord with all judicial expression upon the subject, but they are well supported by authority. The questions dealt with herein have been discussed in the following cases, in which the more important of the common-law cases are referred to and explained: Smith *v.* New England Aircraft Co., 270 Mass. 511 (170 N. E. 385); Swetland *v.* Curtiss Airports Cor., 41 Fed. (2d) 929, modified in 55 Fed. (2d) 201; Rochester Gas & Electric Co. *v.* Dunlap, 226 N. Y. S. 466. See also 2 C. J. 300, § 4.

The petition alleges that some of the pilots were guilty of "low flying" and "that such low flights over adjacent property is a trespass." Assuming that reference to the plaintiff's land was intended, the allegations do not show a trespass. What was meant by low flying? In the absence of any statement of the altitude or other circumstances, it does not show that the act amounted to a trespass. Later on the plaintiff alleged that pilots had flown over his property at altitudes lower than 500 feet, but, properly construed, this averment states an altitude of only a little less than 500 feet. Neither does this averment show a trespass without a further statement of the circumstances. But it is also alleged that such acts of low flying constituted a nuisance, and on this ground it is even claimed that on one occasion planes were flown over the plaintiff's property "all day and unnecessarily for the purpose of aggravating him." If a thing complained of is not a nuisance per se, the facts which make it so must be averred, and a mere general allegation that the thing is a nuisance is not sufficient to withstand a general demurrer. Birmingham Railway &c. Co. *v.* Ashworth, 17 Ala. App. 451 (86 So. 82). There is no allegation that any of the acts of low flying have caused or are causing any hurt, inconvenience or damage to the plaintiff, and consequently it is not made to appear that such flying constitutes a nuisance. Civil Code (1910), § 4457.

The foregoing rulings are made as in the absence of any applicable statute, the laws of 1933, regarding aircraft and airports, having been enacted after the institution of the present suit. In litigation, if any, to which these acts may be applicable, the views expressed in this opinion will be subject to modification if necessary to conform to such statutes. For the reasons stated in the fourth

division of this opinion, the court erred in sustaining the defendants' demurrers and dismissing the plaintiff's petition.

*Judgment reversed. All the Justices concur.*

NOTE.—The reporter has been directed by the court to note in this connection the article by Messrs. Wherry and Condon on "Air Travel and Trespass," appearing in February (1934) issue of United States Law Review, volume 68, page 78, which came to the attention of the court after the rendition of the decision in this case.

RUSSELL, C. J. I concur in the ruling reversing the judgment of the trial judge dismissing the cause of action in the court below. In the main I concur with what has been so splendidly stated by Mr. Justice Bell in expressing the opinion of the court. Many points of the gravest importance to the public are involved, and it is very evident that the law of every one of them has been carefully considered in the light of all authorities which could illustrate the questions. As the result of the industry and legal ability of Mr. Justice Bell, the writer of this opinion, the discussion of the legal principles involved deserves to stand as a landmark in the history of jurisprudence, unsurpassed in the lucidity of its expression and the force and cogency of reasoning supporting his conclusions.

Some of the questions involved, in the law of aviation, which is still in its infancy, are so fundamentally attached to the dearest rights of our citizens, not only now but for all future time, that I wish to state that in concurring in the main in the splendid opinion prepared for the court I by no means concur in anything that is said either in the opinion or the headnotes which would contravene my view that at common law, as well as under the Code, "The right of the owner of lands extends downward and upward indefinitely" (Civil Code of 1910, § 3617), and "The owner of realty having title downwards and upwards indefinitely, an unlawful interference with his rights, below or above the surface, alike give him a right of action" (§ 4477). Consequently the grant of a franchise, no matter of what kind, can no more condemn a right of way for an aviation company over the land or dwelling of another until the owner has received adequate compensation for the condemnation of his property to a public use, than would be the case where the condemnation sought to affect the surface of the ground or the use of the same by subterranean excavation. The height above the surface at which the flying is to be pursued can

not be arbitrarily fixed by those who expect to do the aerial navigation, except in proper proceedings or as a matter of contract with the owner of the soil. I am content to make this general statement of my objections, which of course includes any inference or intimation in the opinion which may conflict therewith.

In regard to the necessity of alleging negligence with respect to noise and dust as injuring the health of the plaintiff's wife, the following observations may not be impertinent: To the writer as now advised, it would seem to be a legal absurdity and a gross miscarriage of justice to say that a party may recover for permanent injury to real estate under the constitutional provision against the taking or damaging of private property for public purposes, *without* averring that the public utility was improperly constructed or operated, that is, without showing negligence or its equivalent, and at the same time to hold (although the court does not so rule in the present case) that no recovery can be had for a personal injury, as for the impairment of one's health, without *proceeding* further and showing such improper construction or operation or negligence, where the person injured is actually occupying the real estate as a permanent home and is injured by the same cause which damaged the real estate. In other words can it be true that for damage to the real estate negligence *need not be shown,* but that in case of personal injury negligence *must be shown?* The nature of the respective causes of action may be different, the former being a suit under the constitutional provision against taking or damaging private property for public purposes without compensation, and the latter being a suit for injury occasioned by a nuisance; but the principle that a thing may be a nuisance though otherwise lawful would seem to put the plaintiff in the personal injury case in at least as favorable a position as if he were suing for damages to his land. If a thing actually causes a personal injury, can the proprietor escape liability on the ground that he has constructed and operated the utility in the manner authorized and required by law, whereas these facts would constitute no defense in a suit for permanent injury to the real estate? Is land more precious in the sight of the law than the physical health and comfort of a human being? To ask the question would seem to answer it.

On the former appearance of this case (*Thrasher* v. *Atlanta,* 176 *Ga.* 71 (166 S. E. 856), the writer held himself disqualified. But

he later discovered that the supposed ground of disqualification did not exist, and accordingly participates with the other Justices in rendering the present decision.

ATKINSON, J., concurs in the judgment, but does not agree to the statement in the second division of the opinion regarding judicial notice, nor to all that is said in the fifth division; being of the opinion, however, that the allegations as to the flying of airplanes over and about the plaintiff's property were insufficient, because failing to show injury from trespass or facts constituting a nuisance.