### GORDY *v.* ARMSTRONG.

No. 13210. JULY 13, 1940. REHEARING DENIED JULY 24, 1940.

*Brandon, Hynds & Tindall,* for plaintiff in error.

*William F. Buchanan,* contra.

BELL, Justice. ■ Since the orders complained of granted injunction "as prayed" in the plaintiff's amendment, except that the second order departed to some extent from prayer 2-*b,* the language of the amendment must be looked to for the purpose of ascertaining the terms of the injunction as finally granted, except as here indicated in reference to the second order. It was error to enjoin the defendant altogether from "shouting through megaphones on said parking lot from eleven o'clock at night throughout the remainder of said night" (see prayer 2-*a*), and from "permitting or allowing on said premises by his employees or patrons after midnight any honking of horns, shouting, or other noises which may be heard in plaintiff's home" (prayer 2-*e*). There is no contention that the defendant's business is unlawful or constitutes a nuisance per se. In its conduct or operation it was necessary to employ some means by which orders of patrons seated in cars could be taken. The defendant testified that the use of megaphones as described in his answer reduced the noise from automobile horns, and one of his witnesses, the chief of police of the City of Atlanta, testified: "While I have had some complaints from Miss Armstrong [the plaintiff] in regard to the noise at this place, I wish to state that in my opinion this place is operated with less noise than any other place of a similar nature in the City of Atlanta. I find on my visits there that every precaution is being taken to eliminate noise and discourage horn-blowing. This precaution includes signs and also word of mouth by the waiters requesting patrons to not blow their horns but to flash their lights." Numerous other witnesses for the defendant gave testimony that they never heard any loud, excessive, or unusual noises at his place of business. It did not appear from any *allegation* of the plaintiff that the defendant's business could be conducted with absolutely no "honking of horns, shouting, or other noises which may be heard in plaintiff's home," or that any of these noises were unreasonable or unnecessary in the conduct of such business. Only two buildings facing south in the same block with the defendant's

stand and parking lot were used for residential purposes. So far as appears, the plaintiff's residence was wholly within the zoned area, and the evidence showed without dispute that the immediate vicinity on the north side of North Avenue was devoted mainly to business enterprises.

In the recent case of *Asphalt Products Co.* v. *Beard,* 189 *Ga.* 610, 612 (7 S. E. 2d, 172), it was said: "The operation of an asphalt-manufacturing and cement-mixing plant is not a nuisance per se. Nor does it become a nuisance per accidens, if it is conducted in a manufacturing section of a city, merely because it is operated by coal or some fuel discharging obnoxious smoke and cinders, or releases dust, or is accompanied by loud, rattling noises during the day and night, and is within 200 feet of a residence, where it is not shown that such operation is unusual in a business of this character, or unnecessary and avoidable." While in the present case the plaintiff did complain of yelling and shouting through megaphones, she did not allege that any noises so made were unusual or unnecessary, and this weakness in her. petition could not be cured by evidence. In the second part of the order to which we have just referred the court went so far as to enjoin any noise whatever after midnight which might be heard in the plaintiff's home, without other qualification. Even the slightest noise was enjoined, if only it might be heard in the plaintiff's home. In the circumstances this would virtually prohibit the defendant from carrying on his business at all after midnight; whereas it has been held by this court, that, "In the absence of statute or ordinance prohibiting it, the business of conducting a sandwich or barbecue stand can be operated at all hours of the night, if the same is carried on in a proper manner." *Pig'n Whistle Sandwich Shops Inc.* v. *Keith,* 167 *Ga.* 735 (2) (146 S. E. 455).

■ It was also error to enjoin the defendant from "operating the incinerator . . at any hour of the night" (prayer 2-*c*), and from its operation "at any time so as to discharge smoke upon or against the home of plaintiff" (prayer 2-*d*). "Theoretically, every person has the natural right to have the air diffused over his premises in its natural state, free from all artificial impurities. . . If this rule were literally applied, its application would seriously disturb business, commerce, and society itself. Hence,

by air in its natural state and free from artificial impurities is meant pure air consistent with the locality and nature of the community. . . The use of fuel in the home, the place of business, and the manufacturing establishment is necessary. In proportion as the population thickens, the impurities thrown into the air are increased. The pollution of the air, actually necessary to the reasonable enjoyment of life and indispensable to the progress of society, is not actionable; but the right (and such it must be conceded) must not be exercised in an unreasonable manner so as to inflict injury upon another unnecessarily." *Holman* v. *Athens Empire Laundry Co.*, 149 *Ga.* 345, 350 (100 S. E. 207). In the instant case, if the plaintiff was entitled to any injunction whatever in reference to smoke, the court should have enjoined only such specific acts as may have been shown by the evidence to result in unnecessary pollution of the atmosphere, either as to volume or odor, considering the locality and its general character with respect to business or residential use. According to this standard, the plaintiff was not entitled to injunction to restrain the defendant from operating the incinerator *at any hour* during the nighttime, or from operating it *at any time* so as to discharge *any smoke whatever* upon the home of the plaintiff.

■ For similar reasons, the court erred in enjoining the defendant from "allowing his patrons to park within fifty (50) feet of plaintiff's residence from midnight on through the remainder of the night, when it is possible for said patrons to park and be served on the remaining portion of the parking lot" (see prayer 2-*b,* and order of December 8). The defendant had the right to operate his business at any and all hours of the night, provided the same was conducted in a proper manner; and this right was not limited to any portion of his lot as distinguished from a different portion. The issue was, not where patrons should be permitted to park, but whether in any portion of the lot there was such conduct or noise as unnecessarily and unreasonably interfered with the quiet and comfort of the plaintiff's home. So the judge should have dealt with specific acts, so far as the pleadings and the evidence might have authorized, without reference to the portion of the lot on which patrons should be permitted to park and be served.

In view of the rulings stated above, it is unnecessary to deal with other questions presented by the assignments of error. In connec-

tion with all of the foregoing, see *Georgia Railroad &c. Co.* v. *Maddox,* 116 *Ga.* 64, 81 (42 S. E. 315); *Savannah &c. Railway Co.* v. *Parish,* 117 *Ga.* 893 (45 S. E. 280); *Hunnicutt* v. *Eaton,* 184 *Ga.* 485 (191 S. E. 919); *Warren Co.* v. *Dickson,* 185 *Ga.* 481 (195 S. E. 568); *Poole* v. *Arnold,* 187 *Ga.* 734 (2 S. E. 2d, 83); *Wilson* v. *Evans Hotel Co.,* 188 *Ga.* 498 (4 S. E. 2d, 155).

*Judgment reversed. All the Justices concur.*