CLAUDE J. VANDERSLICE, HILDA VANDERSLICE, EMLYN CHANDLER, HANNAH CHANDLER, MOREY PARK, NELSENA C. PARK, JOHN E. HALL, ANNA HALL, GILBERT BARLOW, ELLA BARLOW, MARGUERITE H. BURNETT, ELBIE TALLEY, ETHEL TALLEY, EDWARD SMITH and ANNIE SMITH,

*vs.*

CHARLES SHAWN, BUFORD SCHULTZ, POINT BREEZE FLYING CLUB, INC., a corporation of the State of Delaware, and CURTIS L. TALLEY.

*New Castle, July 3, 1942.*

*Thomas H. Wingate,* for complainants.

*W. Thomas Knowles* and *Henry. A. Wise, Jr.,* for respondents.

THE VICE-CHANCELLOR: The respondents Shawn and Schultz operate an airport known as Point Breeze Airport on land in Brandywine Hundred, leased from Curtis L. Talley, also a respondent. It is operated as a private enterprise. The respondent Point Breeze Flying Club, Inc., a nonprofit Delaware corporation, owns two airplanes. The

club has twenty-four members who fly these planes to and from the airport. Altogether, between fifteen and twenty planes are regularly stored and used at the airport. They are all small, lightweight craft of low horsepower: 40, 50, and 65. Flights at the field are almost entirely for pleasure or instruction. No commercial transport planes use the airport.

The complainants, with the exception of Elbie and Ethel Talley, own tracts of land adjoining or very near the airport. The Talleys are tenants of a tract near the airport and the record owner of this land testified that he held it as security for an indebtedness of Elbie Talley to him. Complainants assert that they have been injured by various unlawful acts resulting from the operation of the airport. They contend that it constitutes a nuisance which may be abated only by closing it. The acts charged to be unlawful and the elements of the nuisance, many of which do not affect all of the complainants, may be summarized as follows: repeated low flights over complainants' homes and properties, causing loud and disturbing noises, and frightening certain of the complainants; repeated trespasses on the surface of the Vanderslice land; the stirring up of dust which is blown upon the Vanderslice and Chandler properties; damage to property by objects falling from planes or by the planes themselves in landing; damage to fruit trees by the stream of air circulated by the planes; damage to chickens from exhaust from airplanes; depreciation in value of adjoining properties by reason of the proximity of the airport. An injunction is prayed for to terminate the use of the field as an airport and to forbid the continuance of the various alleged acts causing injury. Respondents deny that a nuisance exists and deny the acts complained of as unlawful.

The landing field lies to the northwest of the intersection of Naaman's Road and Ebright Road. It is in a country district, largely devoted to farming. Within a

radius of a half mile from the airport are mushroom houses, a small slaughter house, and an experimental station for testing paints. Somewhat over a mile away is an amusement park. Complainants' properties are located near the east, south, and west sides of the airport.

The field originally leased for use as an airport was approximately 1500 feet long (east-west) and 700 feet wide (north-south). With these dimensions it was used from October 1939 to the spring or early summer of 1941. About that time, Shawn and Schultz negotiated with the lessor, Talley, for the leasing of two additional strips: one, on the west, to extend the east-west length of the field from 1500 feet to 2200 feet; and the other, along the center portion of the north side, so as to permit runways in a north-south direction of approximately 2300 feet. This second strip would change the general shape of field from roughly rectangular to T-shaped. With Talley's permission, the strip on the west was used during the summer and fall of 1941. The second strip has trees and bushes growing on it and has not yet been used. Neither strip has been formally leased, but it appears from the evidence that the parties intend to enter into a lease of both strips. The bill of complaint was filed on September 28, 1941. On December 31, 1941, the Attorney-General of Delaware issued a Certificate of Compliance for Airports, Landing Areas and Bases, under authority of a proclamation of the Governor, dated December 26, 1941, in which it is certified that an inspection of the Point Breeze Airport disclosed that it then complied with the rules and regulations of the Civil Aeronautics Administrator of the United States.

An airport is not a nuisance *per se,* but may become a nuisance because of unsuitable location or improper manner of construction or operation. *Thrasher v. Atlanta,* 178 *Ga.* 514, 173 *S. E.* 817, 99 *A. L. R.* 158; 2 *C. J. S. Aerial Navigation,* § 29, *pp.* 909, 910. As I understand complainants' case, their chief objection is to the low flight of air-

planes over their properties, accompanied by loud and disturbing noise and occasioning fear of injury from such flights.

The General Assembly, by statute, *Revised Code of Delaware* 1935, *Sec.* 5779, has declared lawful the flight in aircraft over lands and waters of this State, as follows:

"5779. Sec. 16. Lawfulness of Flight; Landing Unlawful; Exception; Damages; Owner Liable: Flight in aircraft over the lands and waters of this State is lawful, unless at such a low altitude as to interfere with the then existing use to which the land or water, or the space over the land or water, is put by the owner, or unless so conducted as to be imminently dangerous to persons or property lawfully on the land or water beneath. * * *"

Certain rules of flight established by statute, *Rev. Code of Del.* 1935, *Sec.* 5769, should be mentioned in this connection:

"5769. Sec. 6. Pilots To Observe Rules Of Flight:—Operators or pilots of aircraft in flight shall observe the following rules: * * *

"(f) Exclusive of taking off from or landing on an established landing field, airport, or on property designated for that purpose by the owner, and except as otherwise permitted by Section 12, aircraft shall not be flown:

"(1) Over the congested parts of cities, towns, or settlements, except at a height sufficient to permit of a reasonably safe emergency landing, which in no case shall be less than 1,000 feet.

"(2) Elsewhere at height less than 500 feet, except where indispensable to an industrial flying operation. * * *"

No complaint is made concerning flights at altitudes over 500 feet, and respondents claim no privilege to fly planes at lower altitudes except in landing and taking off. Whether in landing, taking off, or otherwise, flight over another's land, so low as to interfere with the then existing use to which the land is put, is expressly outside of the statutory definition of lawful flight; and being an unprivileged intrusion in the space above the land, such flight is a trespass. 1 *Restatement of Torts, Sec.* 159. Extensive fly-

ing at low altitudes, accompanied by excessive noise and occasioning unreasonable annoyance to the occupants of the land below, and apprehension of danger on their part, has been held to constitute an element of nuisance in that it interferes substantially with the enjoyment of the property by the occupants. *Swetland v. Curtis Airports Corp.*, (6 Cir.) 55 *F.* 2d 201, 83 *A. L. R.* 319; *Gay, et al., v. Taylor, et al.*, 19 *Pa. Dist. & Co. R.* 31; *People v. Dycer Flying Service, et al., Cal. Sup. Ct. Los Angeles County*, 1939 *U. S. Aviation Reports* 21. While there is some conflict in the testimony, the evidence is clear that there have been repeated flights, principally in landings and take-offs during 1941, at altitudes of less than 100 feet over the homes and buildings of complainants, as well as over other parts of their land. Although the planes which regularly use the field are equipped with mufflers and do not make so much noise as larger aircraft, nevertheless, except when gliding into a landing, the noise of planes at low altitudes and close to the properties is of such intensity as greatly to disturb and annoy the complainants in the occupation and use of their homes and buildings. In view of the repetition of the low flights, the testimony of fear of injury to persons or property does not seem fanciful. Compare: *Gay, et al., v. Taylor, et al., supra.* Already a fence on property of the Chandlers has been damaged by an airplane which approached the field at an altitude low enough to strike the fence. Surely, apprehension of danger from low flights does not depend for its justification upon the actual happening of serious injury. Under the circumstances of this case, there is more than "mere apprehension of injury", without reasonable cause, as found in *Thrasher v. Atlanta*, 178 *Ga.* 514, 173 *S. E.* 817, 818, 99 *A. L. R.* 158.

Flights over fields or those parts of complainants' lands which are remote from the buildings have not been demonstrated to constitute either a nuisance or a trespass. Compare *Smith v. New England Aircraft Co.*, 270 *Mass.* 511,

170 *N. E.* 385, 69 *A. L. R.* 300. On the other hand, the repeated low flights over houses and buildings and land used in connection therewith have been shown to be an unreasonable annoyance and disturbance of the neighboring landowners in the possession of their property, rendering its ordinary use or occupation physically uncomfortable and should be enjoined as a nuisance. Whether they are for the same reasons outside the scope of privileged flight under *Section* 5779 *of the Code* has not been argued by the solicitors and need not be determined.

Another ground of complaint relates solely to injuries to the Vanderslices. It appears that airplanes using the airport have been frequently operated upon the surface of the Vanderslices' land. There is no fence between this land and the flying field. Nor are there boundary markers. This certainly tends to increase the likelihood of recurrence. Apparently none of the trespasses has caused substantial physical injury to the property. They are, however, wholly without justification and no sufficient reason has been suggested why they should not be enjoined as continuing trespasses.

In the light of all the evidence, the other grounds of complaint or elements of nuisance asserted have not been established with the degree of certainty and definiteness required. A detailed discussion of the testimony relating to them is unnecessary. However, it may be well to mention that evidence was offered to show that the proximity of the airport to properties of certain of the complainants caused the value of these properties to depreciate. The operation of an airport is a lawful business; and unless the circumstances disclose that it is a nuisance, its continuance may not be enjoined on the ground that the value of adjoining property is depreciated. *Batcheller v. Commonwealth,* 176 *Va.* 109, 10 *S. E.* 2d 529; 46 *C. J.* 682. Here, the operation of the airport has not been found to be a nuisance, except in so far as the repeated low flights are concerned. If these be eliminated, the sole element of nuisance will be removed.

Complainants' contention that it is impossible to operate the field and avoid landings or take-offs over their homes, buildings and surrounding land, is not established by the evidence. It appears that until the spring of 1941 the airport was operated without the occurrence of the flights found objectionable. It is customary and desirable that take-offs and landings be made upwind when practicable. This is also a statutory rule. *Rev. Code of Del.* 1935, § 5770. Accordingly, take-offs and landings are not always made in the same direction. Planes ordinarily maintain a direct course, in landing or taking off, for some distance from the field. Thus, it would seem that the line of flight after taking off and before landing may be controlled, to some extent, by indicating runways on the flying field. Rules established by the operators may be availed of to control the flight of planes regularly using the airport. It appears that the addition of the proposed northerly extension would go far to prevent low flights over the homes and buildings in landings and take-offs. If the northerly extension should not be added, it may be more difficult to prevent the low flights, because of the proximity of complainants' residences and buildings. However, the evidence does not indicate that this is impracticable. The operators of the airport, Shawn and Schultz, must be held responsible for the objectionable flights and trespasses which, because of the attendant circumstances, are likely to occur in the course of the normal and ordinary operation of the airport. *Gay, et al., v. Taylor, et al., supra; People v. Dycer Flying Service, et al., supra.* The proofs warrant no further relief than that the operators be enjoined from making or authorizing others to make flights and trespasses of the character found objectionable, and from operating the airport in such way that the acts causing injury may reasonably be expected to recur in its normal operation.

The Vanderslices contend that respondent Talley stated to them, when he sold them the property they now own, that

he would not do anything to the detriment of the property. They seek to enjoin him from leasing the land for use as an airport on the ground that this use is a detriment. It is enough to say that the statements made do not amount to an agreement with respect to the use of the remaining land, and no semblance of a case has been made out to warrant the relief prayed.

The bill should be dismissed as to the respondent Talley. My recollection of the testimony is that no member or agent of Point Breeze Flying Club, Inc., was definitely shown to have made any of the low flights over complainants' properties, nor to have trespassed upon the Vanderslice land. Hence, the bill should be dismissed as to the corporation.

A decree accordingly will be advised.